2012 Ark. App. 100

**Alfredo DELGADO, Appellant**

v.

**Swacy A. DELGADO, Appellee.**

**No. CA 11–779.**

Court of Appeals of Arkansas.

Feb. 1, 2012.

Brian Kenneth Woodruff, Jacksonville, for appellant.

Cynthia Satterfield Moody, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellee Swacy Delgado was awarded custody of the parties' minor child, $1000 in alimony per month, and $2500 in attorney's fees in the divorce decree filed in Pulaski County Circuit Court on April 8, 2011. Appellant Alfredo Delgado contends on appeal that the trial court erred in each instance. We affirm the trial court's decree.

Appellant filed for divorce on April 15, 2010, claiming that the parties had married on April 15, 2005, and had a daughter born

on July 9, 2007. Appellant asked for custody of the minor child. Appellee counterclaimed for separate maintenance on April 30, 2010, seeking exclusive use of the marital home and payment of her expenses. She sought custody and child support from appellant as well.

The parties entered into a temporary agreed order filed May 21, 2010, wherein they agreed to share joint custody, sharing equal time with the child. Appellant was awarded temporary use and possession of the marital home and was ordered to continue to pay the parties' bills.

On March 21, 2011, a final divorce hearing was held, and appellant testified that he believed it was in the best interest of his daughter to be in his custody. He claimed that he was more stable than his wife and that he was with his daughter on a constant basis. He testified that he and his daughter participate in many activities together and that he bathes her, feeds her, clothes her, takes her to her doctor's appointments, and takes her to church. Appellant testified that he had concerns about appellee's lifestyle and her ability to be a full-time parent. He asserted that, when appellee visits with the child, she spends too much time texting and sleeping and not paying attention to the child. Also, appellant testified that appellee left town to visit her boyfriend and was gone for days while not calling to check in with the child. Appellant asserted that he believed appellee had been unfaithful during the marriage because she contracted the herpes virus.

Appellee admitted to having a boyfriend, to maintaining a sexual relationship with this boyfriend, and that she believed appellant was a wonderful father. Appellee's mother, Ramona Maldonado, testified on behalf of appellant, stating that appellant kept a clean home, had a good relationship with the child, and was the child's primary care giver.

During her testimony, appellee stated that she should have custody of the child based upon appellant's health problems. Further, appellee testified that when the child is in appellant's care, the child's hair is tangled, she is in diapers, and her fingernails and toenails are dirty and overgrown. Also, appellee testified she did not like the fact that the child slept with appellant and was not potty trained.

Appellant testified that since he had been married to appellee, he had been hospitalized and had a heart-valve replacement and a double or triple bypass. He admitted that when he had not eaten, he felt woozy and that appellee had witnessed those episodes. Appellant is a retired police officer and receives about $3500 per month income and has $90,000 in an account in California that is solely in his name. Appellee works as a waitress.

Appellant and appellee met in an online chat room when appellee was approximately fifteen years old and appellant was approximately fifty years old. Appellee testified that she was intimate with appellant when she was sixteen years old, while her parents accompanied the couple on a vacation to Branson, Missouri. Appellant asserted that nothing inappropriate occurred while appellee was underage.

The trial court awarded custody of the minor child to appellee, awarded appellee $1000 per month alimony, and granted her request for attorney's fees in the amount of $2500. The trial court found specifically as follows:

6. Findings as to Testimony and Evidence. The Court finds that both parties are fit parents.

The Court has considered the demeanor and credibility of the witnesses

and finds that the [appellee] is a more credible witness than is the [appellant].

The Court bases its decision with respect to the granting of custody in part on the basis of the [appellant's] behavior early in the relationship of the parties. The Court finds that the [appellant], who is presently 57 years of age, inappropriately contacted the [appellee], who is now 24 years of age, when the [appellee] was but fifteen (15) years of age and that he knowingly continued that relationship after learning of her minority in a manner that calls into question his judgment as it relates to all matters of his life. The Court finds that the behavior of the [appellant] in his relationship with the [appellee] while she was under the age of majority does not meet the standards adopted by the local community and is not such that he should be granted the custody of a minor child.

Appellant filed a timely notice of appeal, and this appeal followed.

### I. *Custody*

■ Our standard of review in child-custody cases is well established. We consider the evidence de novo but will not reverse unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Tribble v. Tribble*, 2011 Ark. App. 407, 384 S.W.3d 574. Findings are clearly against the preponderance of the evidence when we are left with an irrefutable and express belief that a mistake has occurred. *Id.* We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Id.* This deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child. *Id.*

Child-custody cases are unique because there are no other cases in which the superior position of the trial court to assess witness credibility carries as much weight. *Id.* The primary consideration in child-custody cases is the welfare and best interests of the children; all other considerations are secondary. *Id.*

■ Appellant contends that the trial court erred in granting custody of the minor child to appellee. Appellant's sole argument regarding this point on appeal is that the trial court failed to apply the best-interest standard in this case, as the trial court found that custody was being awarded to appellee based on the circumstances in which appellant met appellee. The trial court specifically found that appellee was a more credible witness regarding the facts of the early relationship of the parties. It is appellant's contention that the trial court failed to consider the child's best interest in awarding custody to appellee.

■ Appellee claims that the trial court correctly determined that it was in the child's best interest that appellee be granted custody, and that appellant's argument on appeal concerns only questions of fact and witness credibility, which fall within the trial court's province. *See Tribble, supra.* We agree. We note that, in stating that appellant failed to adhere to the standards adopted by the local community, the trial court misstated the best-interest standard used in custody cases. However, we believe that the trial court was acknowledging that a party's moral turpitude is a factor that may be considered in a best-interest analysis. *See Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999) (where our supreme court admonished that Arkansas's settled law does not condone a parent's promiscuous conduct or lifestyle). Despite the trial court's use of a community standard in a custody case, we will affirm the circuit court where it reach-

es the right result, even though it may have announced the wrong reason. *See Bridges v. Shields,* 2011 Ark. 448, 385 S.W.3d 176.

The trial court heard evidence to support the award of sole custody to appellee, including, but not limited to, appellant's failure to potty train and keep the child clean, as well as appellant's health problems related to his heart and his current "wooziness" when he does not eat. Further, the circumstances in which the parties met are a proper consideration when determining the child's best interest. Whether viewed as an instance of abysmally poor judgment on the part of appellant or as moral turpitude, this behavior clearly bears on appellant's fitness as a custodian for the parties' child. On our de novo review of the record, we cannot say that the trial court clearly erred in finding that it would be in the child's best interest to be placed in the custody of appellee.

## II. *Alimony*

The decision whether to award alimony is a matter that lies within the trial court's sound discretion, and on appeal, this court will not reverse the trial court's decision to award alimony absent an abuse of that discretion. *Cole v. Cole,* 89 Ark.App. 134, 201 S.W.3d 21 (2005). An abuse of discretion means discretion improvidently exercised, *i.e.,* exercised thoughtlessly and without due consideration. *Southwestern Bell Yellow Pages, Inc. v. Pipkin Enters., Inc.,* 359 Ark. 402, 198 S.W.3d 115 (2004). The primary factors in determining alimony are the financial need of one spouse and the other spouse's ability to pay. *Boudreaux v. Boudreaux,* 2009 Ark. App. 685, 373 S.W.3d 329. The circuit court may also consider other factors, including the couple's past standard of living, the earning capacity of each spouse, the resources and

assets of each party, and the duration of the marriage. *Rudder v. Hurst,* 2009 Ark. App. 577, 337 S.W.3d 565. The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Matthews v. Matthews,* 2009 Ark. App. 400, 322 S.W.3d 15.

Appellant claims that the trial court erred in granting an award of alimony to appellee in the amount of $1000 per month. He concedes that his income is higher than appellee's, but asserts that his income-producing capacity is stagnant and set based on his retirement and disability pay. In contrast, he claims that appellee's financial condition will increase and improve as she continues to work and increase her education. He argues that there were no current paycheck stubs for her recently-changed employment and no specified amounts as to the financial aid she is receiving. He claims that he agreed to pay for her vehicle, which is $6000, and the trial court improperly considered his nonmarital bank account of $90,000. He further claims that they had been married for only six years and that appellee was awarded child support. Thus, appellant contends that the trial court abused its discretion in setting the amount of alimony.

We hold that the trial court's award of alimony was not an abuse of discretion. The trial court considered the factors as set forth in *Rudder, supra,* including (1) the parties' financial circumstances; (2) the amount and nature of the parties' income, both current and anticipated; (3) the extent and nature of the parties' resources and assets; (4) the parties' earning ability and capacity. Appellee testified that she worked, at appellant's insistence, at Hooters restaurant and since leaving that position, was employed by Chili's restaurant,

where she received the same income. Appellant testified that he has a monthly income of $3500 and approximately $90,000 in the bank in California. In light of this evidence as applied to the factors set forth, it was not an abuse of discretion to award alimony to appellee.

### III. *Attorney's Fees*

 The circuit court may award attorney's fees in domestic-relations proceedings, and whether the circuit court should award fees and the amount thereof are matters within the discretion of the circuit court. *See* Ark.Code Ann. § 9–12–309(a)(2) (Repl.2009); *Stout v. Stout,* 2011 Ark. App. 201, 378 S.W.3d 844; *Miller v. Miller,* 70 Ark.App. 64, 14 S.W.3d 903 (2000). In awarding attorney's fees, the circuit court may use its own experience as a guide and can consider the types of factors set forth in *Chrisco v. Sun Industries, Inc.,* 304 Ark. 227, 800 S.W.2d 717 (1990).[1] The court need not, however, conduct an exhaustive hearing on the amount of attorney's fees because it has presided over the proceedings and gained familiarity with the case and the services rendered by the attorney. *Stout, supra; Paulson v. Paulson,* 8 Ark.App. 306, 652 S.W.2d 46 (1983).

 Appellant argues that the trial court erred in granting appellee attorney's fees in the amount of $2500. He argued before the trial court that an award of attorney's fees to appellee was improper as she ultimately agreed to the divorce, had admitted to infidelity during the marriage, and was going to receive a substantial

award of alimony. Thus, appellant contends that the trial court's award of attorney's fees was an abuse of discretion.

Because appellant stands in a greater financial position, the trial court did not abuse its discretion in awarding appellee her attorney's fees. We affirm the trial court's award of attorney's fees.

Affirmed.

HART and WYNNE, JJ., agree.

---

1. The *Chrisco* factors that may be considered by the trial court are (1) the experience and ability of the attorney; (2) the time and labor required to perform the legal services properly; (3) the amount involved in the case and the results obtained; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged in the locality for similar legal services; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client or by the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.