SLIP OPINION

Cite as 2014 Ark. App. 440

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–84

| | |
|---|---|
| ANGIE KAY EVANS<br>APPELLANT | **Opinion Delivered** September 3, 2014 |
| V. | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. DR2012-840-5] |
| DEVIN CHASE O'HARA McKINNEY<br>APPELLEE | HONORABLE XOLLIE DUNCAN, JUDGE |
| | AFFIRMED |

**ROBIN F. WYNNE, Judge**

Angie Evans appeals from the Benton County Circuit Court's order changing custody of then four-year-old H.M. to his father, appellee Devin McKinney. We affirm the order of the circuit court.

The parties divorced in February 2011 in Missouri, and they agreed at that time that appellant would have primary custody of H.M. and that appellee would have generous visitation as set out in the decree. The parties have been involved in litigation since that time. In the Missouri court's judgment modifying the divorce decree, entered in November 2011, Devin's motion to change custody was denied and the court made certain modifications to the visitation schedule. Essentially, Devin was awarded visitation with H.M. every other weekend, alternating holidays, Wednesdays from 9:00 a.m. to 9:00 p.m., and two months in the summer. In addition, each parent was ordered to have "reasonable access to

SLIP OPINION

the child by telephone" during any period that H.M. was in the other parent's custody, except that no telephone calls were allowed after 10:00 p.m.

In October 2012, Devin filed a petition for contempt and change of custody in the Benton County Circuit Court. He alleged that, in violation of the Missouri court's judgment, appellant had repeatedly denied him visitation and telephone visitation, and that she had purposely tried to alienate and destroy the relationship between him and H.M. Specifically, Devin alleged that when the child arrived for visitation, he had been extremely upset and crying and had yelled, "Daddy is going to be mean to me." Devin alleged that Angie's actions constituted a material change in circumstances and that it was in the child's best interest for him to have primary custody. Angie responded, and the court appointed an attorney ad litem in the case.

On September 12, 2013, a hearing was held on Devin's petition for contempt and change of custody. At that time, H.M. had lived with his mother and older half-brother since the divorce. After the parties' divorce but before the hearing, Angie had remarried; Devin had also remarried and later divorced; and in March 2012 Devin had relocated from a house five minutes away from Angie's to Fairland, Oklahoma, approximately one-and-a-half hours away from Angie's house. Before the parties' divorce, Angie had an accident involving a horse and suffered a brain injury, which caused significant problems for a period of time before the divorce. However, at the time of the hearing, she had a stable, full-time job and Devin testified that he could not say that she had failed to take care of H.M. The psychological evaluations of both parties were entered into evidence. Both parties were found to be able to provide a good and stable home for their son, with the caveat that Angie

needed to maintain her medication to help control her mood and behavior; she also "may need more focus on tolerance, humility, and accepting the needs of others." Additional evidence included the attorney ad litem's report, in which he recommended that "it is in [H.M.'s] best interest that Devin have primary custody." The attorney ad litem based his opinion on his visits to both of the parties' homes, texts and emails between the parties, the psychological evaluations, and his observations at a visitation exchange. At that exchange, H.M. wanted to go with Angie's mother and Devin initially said that he could, but after talking to the attorney ad litem, he changed his mind and insisted that H.M. go with him. Angie apparently did not recognize the attorney ad litem and "started towards [his] car in a menacing way and told her mother in a loud voice that she was going to see 'see who the f★★★ that is." She realized who it was and turned away before she got too close.

At the conclusion of the hearing, after hearing both parties' testimony, the court made the following findings from the bench. The court found that there had been a "substantial" change of circumstances in this case, citing "a continued and intensifying problem with these visits," alienation, remarriage of both parties, and Devin's divorce and relocation. The court discussed H.M.'s best interest and stated that he was put through trauma at every visitation exchange, for which the court blamed Angie entirely. The court stated that one of the major responsibilities of the custodial parent was to foster a strong and healthy relationship between the child and the other parent, something that Angie refused to do for H.M. The court found that it was in H.M.'s best interest to immediately change custody to Devin, and Angie was ordered to pay child support of $210 bimonthly. The court entered a written order setting out the change of custody and the visitation schedule, and Angie timely appealed.

SLIP OPINION

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Anderson v. Thomas*, 2013 Ark. App. 653. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.* The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child, and to discourage repeated litigation of the same issues. *Id.*

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id.* In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Id.* In reviewing child-custody cases, we consider the evidence de novo, but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Preston v. Preston*, 2014 Ark. App. 58.

In this appeal, Angie argues that the trial court clearly erred in finding a material change in circumstances and in determining the best interest of the minor child. Regarding the material change in circumstances, we do not find any clear error in the trial court's finding that such a change had occurred because of parental alienation. We acknowledge her arguments that Devin was not denied visitation but instead chose not to exercise certain visitation because of H.M.'s crying; that Devin and H.M. had no problems once Devin got him home; that the alleged alienation at the visitation exchanges because of her parents'

involvement was not significant; and her denial of telephone visitation was justified and, in any case, had improved by the time of the hearing. She cites recent case law in which this court has held that the appellee failed to prove a material change in circumstances and reversed the decision of the circuit court; however, these types of cases necessarily turn on the specific facts presented, and we do not find the cases she cites factually similar enough to be persuasive in the present case.

Devin responds that the trial court properly found a material change of circumstances and properly authorized a change of custody. He contends that the following actions by Angie show a significant failure to foster H.M.'s relationship with him: denying him phone visitation; bringing her parents to visitation exchanges; encouraging H.M. to call his stepfather "daddy"; not listing him on H.M.'s school contact forms; making disparaging remarks about him in H.M.'s presence; and informing hospital staff that he had previously assaulted her, so that he was only allowed to see H.M. before surgery while escorted by hospital security.

This court has stated that whether one parent is alienating a child from the other is an important factor to be considered in change–of–custody cases because a caring relationship with both parents is essential to a healthy upbringing. *Carver v. May*, 81 Ark. App. 292, 298, 101 S.W.3d 256, 260 (2003) (citing *Turner v. Benson*, 59 Ark. App. 108, 953 S.W.2d 596 (1997)). On the other hand, as Angie points out, this court has held that a "scattering of petty complaints does not amount to a 'failure to foster' of a significant degree to support a finding of changed circumstances." *Byrd v. Vanderpool*, 104 Ark. App. 239, 244, 290 S.W.3d 610, 613 (2009); *see also Dodd v. Gore*, 2013 Ark. App. 547.

On this record, we cannot say that the trial court clearly erred in finding that a material change in circumstances had occurred. Angie's actions in denying telephone visitation, making visitation exchanges difficult for the child by bringing her parents, making disparaging remarks about Devin in the child's presence, among other things, led the court to conclude that she was alienating the child from his father. While Angie offers explanations for many of these things, the trial court expressly disbelieved her testimony on many points, and that credibility determination was a matter for the trial court. *Delgado v. Delgado*, 2012 Ark. App. 100, at 4, 389 S.W.3d 52, 56 ("Child-custody cases are unique because there are no other cases in which the superior position of the trial court to assess witness credibility carries as much weight.").

As for the court's best-interest finding, our de novo review of the evidence leads us to conclude that either parent is capable of caring for H.M., and the court's best-interest finding is not clearly erroneous. We will not substitute our judgment for that of the trial court, which was there to observe the witnesses first-hand. There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry a greater weight than those involving the custody of minor children, and our deference to the trial judge in matters of credibility is correspondingly greater in such cases. *Boudreau v. Pierce*, 2011 Ark. App. 457, at 11, 384 S.W.3d 664, 671.

Finally, Angie argues that the trial court "clearly erred when it changed custody absent an admonition, warning, guidance or contempt finding." She cites *Carter v. Carter*, 19 Ark. App. 242, 719 S.W.2d 704 (1986), in which this court wrote, "[C]ontempt powers should be used prior to the more drastic measure of changing custody in order to resolve visitation

problems and insure some stability in the child's life." 19 Ark. App. at 249, 719 S.W.2d at 707. While Angie is correct that the trial court had at its disposal the power to hold her in contempt as a first step, there is no requirement that the court do so.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Studebaker Law Firm*, by: *Dee Bailey Studebaker*, for appellant.

*Hatfield Harris, PLLC*, by: *Andrew H. Hatfield*, for appellee.