SLIP OPINION

Cite as 2014 Ark. App. 594

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-172

|  |  |
|---|---|
| | **Opinion Delivered** OCTOBER 29, 2014 |
| DANETTE WELCH WHITE | APPEAL FROM THE COLUMBIA |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. DR-12-294] |
| V. | |
| | HONORABLE LARRY W. |
| | CHANDLER, JUDGE |
| MICHAEL J. WHITE | |
| APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

This is a child-custody case. After eight years of marriage, appellant Danette White filed a complaint for divorce against appellee Michael White on October 29, 2012. In her complaint, Danette alleged that she should have custody of the parties' son R.W., now seven, and in Michael's answer he denied that she should have custody. A two-day hearing was held, and the trial court entered a divorce decree on August 5, 2013, awarding custody to Michael. Danette filed a notice of appeal as well as a motion for reconsideration on September 3, 2013, and the trial court entered an order denying her motion for reconsideration on November 4, 2013. Danette filed an amended notice of appeal on November 4, 2013.

In this appeal, Danette argues that the trial court abused its discretion in denying her motion for reconsideration. Danette also contends that the trial court erred in awarding custody to Michael. We affirm.

The initial hearing was held on May 31, 2013. At the conclusion of that hearing, Danette's counsel asserted that he had learned from opposing counsel just the day before that custody would be an issue. Danette's counsel stated, "I thought we were going to be arguing over property, and obviously I was mistaken and we resolved that." Danette's counsel asked for an additional hearing to present more testimony on the custody issue, and the trial court granted the request. The second day of the divorce hearing was held the following Monday, on June 3, 2013.

Danette lives on a chicken farm, and while she had been unemployed for a few months prior to the hearing, she anticipated resuming chicken farming in the future. Danette had temporary custody of R.W. pending the divorce, and she also has custody of her thirteen-year-old son, N.L., from a previous relationship. Danette testified that during their marriage she and Michael took equal care of R.W., and that they both love him and are good parents. Danette also testified that although N.L. is not Michael's biological son, Michael has been like a father to N.L. and has helped raise him. Danette testified that she has a close family that lives in the area and is available to help her care for her children. Danette thought that it was in R.W.'s best interest to be in her custody.

Michael testified that he is a master plumber and has owned his own business for the past seven years. He indicated that he has a good relationship with R.W. and that they

engage in lots of activities together. He stated that he separated from Danette in August 2012 because of Danette's violence and inappropriate conduct. Michael introduced a video recording of an incident showing Danette's volatile behavior, where she was screaming at him, hitting him, and threatening him. Michael testified that Danette displayed this type of uncontrollable behavior at least once a month. Michael further testified that Danette was verbally abusive to the children and beat them excessively. Michael did acknowledge in his testimony that he has two older children with whom he no longer has any relationship.

Michael's mother, father, and stepmother testified that they have been involved in R.W.'s life and are available to help raise him. These witnesses testified that Danette cursed incessantly and that she often directed extremely vulgar language toward her children when disciplining them. There was also testimony that Danette had angry outbursts and administered excessive and violent corporal punishment on R.W. Finally, there was evidence that Danette engaged in the unusual practice of bathing with her two sons.

At the close of the two-day hearing, Danette's counsel suggested that the parties submit written briefs on the custody issue to be decided by the trial court, and the court agreed and set a briefing schedule. On July 1, 2013, Danette's counsel submitted a six-page letter brief to the trial court, exhaustively setting forth the evidence from the hearing pertaining to custody and arguing that it was in R.W.'s best interest to be placed in the custody of Danette. Nowhere in her brief did Danette claim a lack of notice or time to prepare for the custody battle. On August 5, 2013, the trial court entered the divorce decree awarding custody to Michael.

3

SLIP OPINION

On September 3, 2013, Danette filed a motion for reconsideration, purportedly pursuant to Rule 60 of the Arkansas Rules of Civil Procedure. In her motion, Danette claimed that she did not know Michael was seeking custody until the day before trial and that she lacked sufficient notice and time to prepare for the custody case. Danette claimed that due to this lack of notice she was unable to present large amounts of evidence to the court. Attached to Danette's motion were multiple affidavits attempting to establish additional facts including that Michael was violent and abusive, and that he had cursed and behaved badly in front of the children. In her motion to reconsider, Danette argued that there had been a miscarriage of justice, that the court should schedule a hearing to take additional evidence, and that custody of R.W. should be placed with her.

After a hearing on Danette's posttrial motion,[1] the trial court entered an order on November 4, 2013, denying the motion for reconsideration. In reaching its decision, the trial court explained:

> At the hearing on Friday, May 31, 2013, counsel for the parties advised the court that it would not be possible to finish the testimony that day. All agreed to take as much testimony as possible and to continue the proceedings at 2:00 p.m. on Monday, June 3, 2013. [Danette's counsel] testified that he was well aware that he could have asked for a continuance following the May 31st portion of the hearing, and he believed that the motion would have been granted had it been requested. However, he stated that he elected to go forward with the hearing on June 3 because he believed it to be in his client's best interest. Having made that decision, movant should not now be heard to complain that other evidence and testimony should have been offered. To allow an unsuccessful litigant to receive a new trial by merely alleging that there is additional

---

[1]Danette waived her attorney-client privilege so that her counsel could testify at the hearing. Her counsel provided testimony regarding phone conversations with opposing counsel and the decision to go forward with the custody battle.

evidence and testimony that the court should hear would undermine the entire justice system.

Danette's first argument on appeal is that the trial court abused its discretion in denying her motion for reconsideration. She contends that her motion should have been granted pursuant to Rule 60(a), which provides, "To correct errors or mistakes or prevent the miscarriage of justice, the court may modify or vacate a judgment, order or decree on motion of the court or any party, with prior notice to all parties, within ninety days of its having been filed with the clerk." Danette claims that she was a victim of surprise at the divorce hearing because she had just recently become aware that Michael was seeking custody of R.W. Danette argues that as a result of this "ambush" she was denied notice and a fair opportunity to prepare her case and litigate the controversy.

We reject Danette's first argument for two reasons. First, we conclude that her posttrial motion, although titled under Rule 60, was actually in the nature of a motion for new trial that sought relief under Rule 59, and that the motion was untimely because it was not filed within ten days of the divorce decree. Moreover, even had a timely posttrial motion been filed, this would have come too late because Danette failed to object and request a continuance for additional time to prepare at the divorce hearing.

Although Danette filed her motion for reconsideration under Rule 60 claiming a "miscarriage of justice," our supreme court has held that motions should be liberally construed and that courts should not be blinded by titles but should look to the substance of motions to ascertain what they seek. *See Stickels v. Heckel*, 2009 Ark. App. 829, 370 S.W.3d 857. Rule 59(a) provides, in pertinent part, that "[a] new trial may be granted . . . for any of

the following grounds materially affecting the substantial rights of such party: . . . (3) accident or surprise which ordinary prudence could not have prevented[.]" In this case the relief requested by Danette in her posttrial motion is squarely contemplated by Rule 59(a)(3).

In *Stickels*, *supra*, we stated that were we to interpret the term "miscarriage of justice" as used in Rule 60(a) expansively to embrace all grounds under Rule 59, Rule 59 would have no independent meaning. Our supreme court has clearly stated that Rule 60 may not be used to breathe life into an otherwise defunct Rule 59 motion. *United S. Assurance Co. v. Beard*, 320 Ark. 115, 894 S.W.2d 948 (1995). Rule 59(b) provides that a motion for new trial shall be filed not later than ten days after entry of the judgment. Because Danette's purported Rule 60 motion was in actuality a Rule 59 motion and was not filed within ten days of the divorce decree, the motion was untimely and the trial court was without jurisdiction to entertain it.

Even were we to agree with Danette that her posttrial motion was timely and properly before the trial court, she would still be afforded no relief. It is well settled that to preserve a point for appeal, a proper objection must be asserted at the first opportunity, *Travis Lumber Co. v. Deichman*, 2009 Ark. App. 299, 319 S.W.3d 239, and a party cannot obtain relief by asserting an argument for the first time in a posttrial motion. *Milner v. Luttrell*, 2011 Ark. App. 297, 384 S.W.3d 1. It has long been the rule in civil cases that both an objection and a request for a continuance are prerequisites to appellate review of a claim of surprise. *Swindle v. Lumbermens Mut. Cas. Co.*, 315 Ark. 415, 869 S.W.2d 681 (1993). In *Thorne v. Magness*, 34 Ark. App. 39, 805 S.W.2d 95 (1991), we stated that one who is surprised by his adversary's testimony is not entitled to a new trial on that ground if, rather than asking for a

postponement to secure necessary evidence, he reserves his plea of surprise as a "masked battery in the effort for a new trial."

At the divorce hearing, Danette neither objected to Michael's testimony bearing on child custody nor requested a continuance beyond the following Monday to secure additional evidence. The case moved forward and was fully litigated without objection by Danette until she received an adverse custody decision and filed her posttrial motion. At the hearing on Danette's posttrial motion, her attorney gave the following testimony during cross-examination:

> When I find out the day before that you are really serious about custody, I could have asked for a continuance. I don't know if it most likely would have been granted. Typically, my experience is if you and I both agree, typically the court will not have a problem with that. I could have requested it. I thought it was in my client's best interest to go forward. I can sit here and Monday morning quarterback, there were a lot of things that came out in the trial that I was unaware of. I made that trial strategy. . . . Well, I don't know how much liberty I got on Monday afternoon of putting on anything I wanted. I did put in everything I wanted to put in at the time [on the issue of custody].

This testimony by her trial counsel demonstrated that Danette had a full and fair opportunity to litigate the custody issue, and that her counsel elected not to request a continuance as a matter of trial strategy. By failing to object at the divorce hearing or request additional time to prepare, Danette waived any claim of unfair surprise, and such claim could not be resurrected by a posttrial motion.

Danette's remaining argument is that the trial court erred in awarding custody to Michael. Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the child; all other considerations are secondary. *Wymer v.*

7

*Hutto*, 2014 Ark. App. 497, __ S.W.3d __. In reviewing child-custody cases, we consider the evidence de novo but will not reverse a trial court's findings unless they are clearly erroneous. *Id.* We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Id.* This deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child. *Id.*

Giving the proper deference to the trial court on matters of judging credibility and evaluating the best interest of the child, we hold that the trial court's decision to award custody of R.W. to Michael was not clearly erroneous. It is evident from the record that both parties love their son and that both are capable of being his custodian. However, in finding that it was in R.W.'s best interest to be in his father's custody, the trial court relied on testimony that Danette had considerable anger issues and would sometimes exhibit uncontrollable outbursts. There was also testimony that on some occasions when she disciplined R.W. she would use vulgarity and call him deplorable names, and would sometimes administer excessive punishment. Michael demonstrated that he can provide stability for R.W. and has considerable assistance from an extended family that shows a great interest in R.W. and his educational development. The trial court found that Michael was not without his faults, but that those faults did not cause the court nearly the concerns it had about Danette.

8

We are mindful that the trial court's custody decision has the effect of separating the custody of R.W. and his older half-brother, N.L. However, we have held that the prohibition of separating siblings in the absence of exceptional circumstances does not apply with equal force in child-custody cases where the children are half-siblings. *Eaton v. Dixon*, 69 Ark. App. 9, 9 S.W.3d 535 (2000). In this case, the testimony reflected that R.W. and N.L. will still live in the same neighborhood, and Michael expressed the intent that they continue to spend time together. We affirm the trial court's finding that it was in R.W.'s best interest to be placed in his father's custody.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*The Law Office of Sara M. Hartness*, by: *Sara M. Hartness*, for appellant.

*Kinard, Crane, Butler & Phillips, P.A.*, by: *David F. Butler, Jr.*, for appellee.