PHILLIP T. WHITEAKER, Judge
In this one-brief case, appellant Melissa Jackson appeals the Pulaski County Circuit Court's child-custody determination regarding Jackson's son, Q.L. The circuit court awarded joint legal custody of Q.L. to Jackson and appellee Quanterrio Littleton but primary physical custody of Q.L. to Littleton. On appeal, Jackson contends that the circuit court's decision was not in Q.L.'s best interest. We affirm.
I. Background and Procedural History
Jackson and Littleton were married in 2002. They are the parents of two children, a son, Q.L., and a daughter, B.L. Q.L. was born in 2007. The couple separated in 2008, and Jackson moved with Q.L. to Puerto Rico. Jackson returned to Arkansas in 2013 and reunited with Littleton; their daughter, B.L., was born in July 2014. The couple separated again in December 2014. After their separation, Jackson lived in Little Rock with both children, and Littleton lived in Pine Bluff.
*354 In 2016, Q.L. began having behavioral problems in school. As a result, Jackson and Littleton agreed that Q.L. would stay with Littleton to see if his behavior would improve, and Littleton enrolled Q.L. in the Pine Bluff School District during the fall semester. Jackson had Q.L. over the Thanksgiving break, but when the break was over, she told Littleton that she was going to reenroll him in the Little Rock School District.
In November 2016, Jackson filed for divorce. In response, Littleton filed an answer to Jackson's complaint for divorce and a counterclaim seeking joint custody of both children. He also filed a petition for an ex parte order for temporary custody. The circuit court entered an order denying Littleton's request for ex parte relief, but it scheduled an expedited temporary hearing on the matter. After taking testimony at the temporary hearing, the court awarded temporary custody of B.L. to Jackson and temporary custody of Q.L. to Littleton, with each party exercising alternating-weekend visitations so that each parent would have both children every other weekend.
The circuit court ultimately held a final hearing on Jackson's complaint for divorce and subsequently entered a final divorce decree. The court found that it was in the children's best interest to maintain the custody arrangement as previously ordered. The court determined that Jackson and Littleton should share joint legal custody of the children;[1] Jackson was awarded primary physical custody of B.L., and Littleton was awarded primary physical custody of Q.L. The court also made permanent the alternating-weekend-visitation plan, "so that each party shall have both minor children in their custody during their respective weekend visitations." Neither Jackson nor Littleton was ordered to pay child support. Jackson filed a timely notice of appeal from the decree.
II. Standard of Review
Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. Starr v. Starr , 2015 Ark. App. 110, at 6-7, 455 S.W.3d 372, 375-76 ; Evans v. McKinney , 2014 Ark. App. 440, at 4, 440 S.W.3d 357, 359. Our standard of review in child-custody cases is well established. We consider the evidence de novo but will not reverse unless the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. Delgado v. Delgado , 2012 Ark. App. 100, at 4, 389 S.W.3d 52, 56. Findings are clearly against the preponderance of the evidence when we are left with an irrefutable and express belief that a mistake has occurred. Id. With these standards in mind, we now consider the testimony and evidence before the circuit court.
III. Testimony
The circuit court had two occasions to hear testimony from the parties concerning their custody requests. Jackson presented evidence to the court about her income of approximately $2,600 a month, her three-bedroom apartment where Q.L. had his own room, and her efforts to transfer Q.L. from the Lighthouse Academies charter school in Pine Bluff to the Lighthouse Academies campus in North Little Rock. She also presented evidence of the strong bond between Q.L. and B.L. and the impact that the sibling separation was having on B.L. Likewise, Littleton presented *355 evidence to the court concerning his income of $900 a month in Social Security benefits and about $1,200 a month in veteran's benefits. Littleton said that he was currently living in a one-bedroom apartment where Q.L. usually slept on the couch in the living room, but he planned to get a four-bedroom house with assistance from a VA loan as soon as the divorce was finalized. Regarding Q.L.'s education, Littleton reported that Q.L.'s grades had improved to the point that he was making As and Bs and had been on his school's merit list twice.
Both Jackson and Littleton agreed that Q.L. was exhibiting educational and behavioral issues while living with Jackson. They disagreed about how much improvement Q.L. had experienced since living with Littleton. Littleton said that when he first got custody, Q.L. was having some problems at school, but since then, his behavior had improved as well, except for one reported instance after an extended visit with his mother. Jackson admitted that Q.L. had "been doing a lot better" since the temporary-custody arrangement had gone into effect. She further described Q.L.'s "disrespectful side" as being "gone," saying he acted like a normal ten-year-old boy. She said, however, that it was hard for her to tell how much Q.L. had improved because she no longer interacted as much with him since she had him only every other weekend. She agreed that she and Q.L. got along fine, his behavior was more controlled, and there were fewer tantrums.
The circuit court also heard testimony from Q.L. Q.L. said he was making good grades at the Lighthouse Academies school in Pine Bluff and had friends there. He said it was "good living with [his] dad" and that while he got along with his mother okay, he got along better with his dad. Q.L. said, "I want to continue to stay with my dad. I would rather stay with my dad than to stay with my mom, because I stayed with my mom, like, eight and a half years and I stayed with my dad, like, half a year." Q.L. said he felt like his dad treated him better, and his desire to live with his dad was "a strong feeling."
When questioned by Jackson's attorney, Q.L. said that his mother was "pretty strict" with him and had a seven o'clock bedtime as opposed to a ten o'clock bedtime at his father's house. His mother made him do more chores than his dad as well, and she was stricter about his doing homework, although she helped him with it. On the whole, Q.L. said that it was "easier to just kind of hang out with [his] dad."
IV. Discussion
In her sole point on appeal, Jackson argues that the circuit court clearly erred in awarding primary physical custody of Q.L. to Littleton. She raises numerous points in support of her argument, such as the following: (1) she had been Q.L.'s primary caregiver; (2) the circuit court did not adequately consider Q.L.'s best interests; (3) she was better at working with Q.L.'s teachers on his educational needs; (4) Q.L. testified that he wanted to live with his father, but that was only because his father let him play video games instead of doing his homework; (5) Littleton's living arrangements are inferior to Jackson's; (6) Q.L. and his sister B.L. were not kept together; and (7) Littleton lacked personal responsibility because he had two other children by two other women.
Jackson's arguments, however, amount to nothing more than a request for this court to reweigh the evidence and to do so in her favor. This court has consistently held that it will not do so. See Cooper v. Merwether , 2018 Ark. App. 282, at 6, 549 S.W.3d 395, 398 ;
*356 Wilhelm v. Wilhelm , 2018 Ark. App. 47, at 6, 539 S.W.3d 619, 624 ; Glisson v. Glisson , 2018 Ark. App. 21, at 11, 538 S.W.3d 864, 869. We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. Delgado , 2012 Ark. App. 100, at 4, 389 S.W.3d at 56. This deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child. Id. Child-custody cases are unique because there are no other cases in which the superior position of the circuit court to assess witness credibility carries as much weight. Id.
Moreover, we cannot agree that the circuit court's conclusions were clearly against the preponderance of the evidence. The facts before the circuit court, as set forth above, were that Q.L. was doing significantly better, both behaviorally and gradewise, in his father's custody. Although Littleton's living arrangements were far from ideal, he testified -apparently, to the circuit court, credibly-that he would soon be approved for a more appropriate home. Q.L. testified that he was happier with his father, and the circuit court could take that desire into consideration. See Ark. Code Ann. § 9-13-101(a)(1)(A)(ii) (Repl. 2015); Thurmon v. Thurmon , 2016 Ark. App. 497, at 1-2, 504 S.W.3d 675, 676 (holding that in determining the best interest of the child, the court may consider the preferences of the child if he or she is of a sufficient age and mental capacity to reason, regardless of chronological age).
After giving due deference to the circuit court's observations and credibility determinations, we conclude that there was no clear error in the court's decision to award primary physical custody of Q.L. to Littleton.
Affirmed.
Klappenbach and Hixson, JJ., agree.

Jackson does not challenge the court's decision to award both parents joint legal custody of B.L.