Cite as 2020 Ark. App. 431

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-19-866

| | | |
|---|---|---|
| ASHLEY ROPER | | **Opinion Delivered:** September 23, 2020 |
| | APPELLANT | |
| | | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FDR-18-531] |
| V. | | |
| TRAVIS O'NEAL | | |
| | APPELLEE | HONORABLE SHANNON L. BLATT, JUDGE |
| | | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

This case arises from a custody dispute between appellant Ashley Roper and appellee Travis O'Neal over their daughter, A.O. The Sebastian County Circuit Court awarded primary custody of A.O. to Travis, subject to Ashley's visitation. On appeal, Ashley argues that the circuit court clearly erred in finding that placing custody of A.O. with Travis was in the child's best interest. We find no error and affirm.

I. *Background*

Ashley and Travis began dating in 2013, and Ashley gave birth to A.O. in May 2014. They lived together as a couple until an argument in April 2018 ended their relationship, and Ashley moved with A.O. to Texas. After the separation, Travis filed a petition to establish paternity, custody, visitation, and support alleging that he was in a better position

to provide a stable home environment for A.O.[1] Ashley answered and counterclaimed arguing that she was the fit and proper person to have custody of A.O. The circuit court appointed an ad litem to represent A.O.'s best interest.

At a temporary hearing, Ashley and Travis agreed that Ashley should have temporary custody pending a final hearing. Subsequently, the court entered a temporary order establishing Travis's paternity of A.O., granting temporary custody of the child to Ashley pending a final hearing, awarding Travis visitation every other weekend, and ordering him to pay temporary child support.

The parties proceeded to a final hearing at which they each offered their own testimony as well as that of several witnesses. Following the hearing, the circuit court entered its order finding that it was in A.O.'s best interest for primary custody to be awarded to Travis. Ashley was granted the court's standard visitation and was ordered to pay child support of $188 biweekly. Ashley filed a timely notice of appeal and now argues that the circuit court erred in awarding custody of A.O. to Travis.

## II. *Standard of Review*

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Starr v. Starr*, 2015 Ark. App. 110, at 6–7, 455 S.W.3d 372, 375–76; *Evans v. McKinney*, 2014 Ark. App. 440, at 4, 440 S.W.3d 357, 359. Our standard of review in child-custody cases is well established. We consider the evidence de novo but will not reverse unless the circuit court's

---

[1]Neither party has ever disputed that Travis is A.O.'s biological father, and his name is listed on her birth certificate.

findings are clearly erroneous or clearly against the preponderance of the evidence. *Delgado v. Delgado*, 2012 Ark. App. 100, at 4, 389 S.W.3d 52, 56. Findings are clearly against the preponderance of the evidence when we are left with an irrefutable and express belief that a mistake has occurred. *Jackson v. Littleton*, 2018 Ark. App. 511, at 3, 561 S.W.3d 352, 354.

### III. *Discussion*

In her sole argument on appeal, Ashley contends that the circuit court clearly erred in awarding Travis primary custody of A.O. when she "had been the primary caregiver for the child throughout the child's entire life and the only relevant difference between the parties was that [Travis's] income exceeded that of [Ashley's]." She notes that the court did not detail any specific findings as the basis for its award of custody, and she asserts that the "only apparent difference" between her and Travis was the disparity in their financial situations.

Admittedly, the court did receive evidence concerning the disparity in their financial situations. Travis had been steadily employed at Baldor for eight years, has a 401k plan, and was paying child support. Ashley was employed but made less money than Travis. In fact, her own bank records introduced at the March 2019 hearing showed that her bank account had a negative balance in the last few months of 2018.

We disagree, however, with Ashley's assessment that the "only apparent difference" was this financial disparity. We conclude that there was ample basis for the circuit court's decision that it was in A.O.'s best interest to be placed with Travis because of Ashley's overall instability. Ashley is less financially stable than Travis, but this financial instability is greater than a disparity of income. In addition to making less money, Ashley experienced

3

difficulties meeting A.O.'s child-care and clothing needs. Ashley attempted to handle these difficulties by obtaining assistance from a church and by creating a Go Fund Me account. When Travis offered to assist Ashley and A.O. financially, such as by paying for daycare or offering to buy clothing or shoes, Ashley refused the offer, stating that she "did not want to help [him] look better in court." Instead, she wanted him to pay cash directly to her. Further, Ashley was driving a vehicle titled in Travis's name, did not have insurance on the vehicle, and had incurred several hundred dollars' worth of bills from the Texas Toll Authority. Because he was listed as the owner of the vehicle, Travis had to pay the toll charges. When he addressed the situation with Ashley, she advised him to deduct the money owed from her child support.

Ashley's instability is not limited to her financial issues, and the circuit court heard other evidence that concerned each party's stability and fitness. In both his pleadings and his testimony, Travis stressed Ashley's frequent moves and lack of employment. The circuit court heard testimony that after the parties' separation, Ashley and A.O. had resided at five different locations before finding a permanent place to live. Travis, however, had lived in the same duplex for more than three years. Travis also explained that Ashley had worked only sporadically while they had been together and had been fired from each of the jobs she worked. Ashley admitted that she had been fired from several positions and was unemployed six months before moving to Texas with A.O.

As to fitness, Travis testified that there had been occasions when Ashley would interfere with his visitation. In June 2018, Ashley refused to allow visitation for nearly a month. On another occasion, Ashley was visiting family in Oklahoma for three days, about

4

an hour away from Travis. Despite his attempts to facilitate visitation, she did not respond to his messages until the last day of her visit, when she allowed him to see A.O. for only about forty minutes. The court received evidence in the form of text messages that showed Ashley explicitly denying Travis visitation. In response, Ashley testified that there were instances when Travis would "just opt[] not to exercise" his visitation. She also claimed that early problems with visitation were the results of a "misunderstanding" about the visitation order.

Other testimony shed light on Ashley's and Travis's fitness. The court received evidence that both Ashley and Travis were physically aggressive to each other during the relationship and that both engaged in the use of alcohol that precipitated instances of domestic violence. In addition, the court heard evidence of a camping trip when Ashley was caught smoking marijuana in the tent where A.O. was sleeping. Although Ashley denied this allegation, the credibility of the witnesses and the weight of the evidence is a matter delegated explicitly to the circuit court, and we give due deference to the circuit court's superior position to judge the credibility of the witnesses. *Cordell v. Cordell*, 2018 Ark. App. 521, 565 S.W.3d 500.

In addition, the attorney ad litem, whom the circuit court had appointed to represent A.O.'s interests, recommended that custody be awarded to Travis. The ad litem expressed concern about not only Ashley's finances but also her stability—particularly her decision making—in light of Ashley's admission that she did not have a job, did not have money saved in a bank account, and "did not have a plan" when she moved to Texas. The ad litem acknowledged that neither Ashley nor Travis had a current work schedule conducive to

5

being a single parent, but she felt Travis at least had "a feasible plan" for child care and greater financial stability.

Our supreme court has held that there is no other case in which the superior position, ability, and opportunity of the circuit court to observe the parties carry a greater weight than one involving the custody of minor children. *Taylor v. Taylor*, 345 Ark. 300, 304, 47 S.W.3d 222, 224 (2001). Given the evidence presented to the circuit court and our deference to that court's credibility assessments, we cannot agree with Ashley that the court was solely focused on the disparity between her and Travis's incomes, nor are we able to find clear error in the circuit court's decision to award custody of A.O. to Travis.

Moreover, to the extent Ashley argues that the circuit court gave no consideration to the fact that she was A.O.'s primary caregiver, we disagree. At the conclusion of the hearing, the court stated as follows:

> While I appreciate [Ashley's counsel's] arguments that the plaintiff father has only seen the minor child for a short period of time over the past year, I do not know that he has had any other opportunity to do that. At the time the mother left, these parties were living together and [he was] seeing the child on a daily basis. One parent took off, six hours away.

By this statement, the court was not discounting or discrediting Ashley's status as primary caregiver but was simply refuting Ashley's argument that Travis had seen A.O. only "approximately three weeks since last May or June."

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya*, for appellant.

*Bryant & Estell, LLC*, by: *Veronica L. Bryant*, for appellee.

6