104 Ark.App. 239

**Paula Vanderpool BYRD, Appellant,**

v.

**Clifford V. VANDERPOOL,
III, Appellee.**

**No. CA 07–1313.**

Court of Appeals of Arkansas.

Jan. 7, 2009.

Putnam Law Firm, by: William B. Putnam, Fayetteville, for appellant/cross-appellee.

Clark & Spence, by: George R. Spence, Bentonville, for appellee/cross-appellant.

LARRY D. VAUGHT, Chief Judge.

This child-custody appeal raises two issues. The first issue is whether the trial court erred in determining that a material change in circumstances occurred authorizing it to revisit the issue of child custody. The second is whether the trial court erred in determining that a joint-custody arrangement was in the best interest of the parties' minor children. Because the record does not support the initial-material-change-of-circumstances finding, we do not address the secondary question of joint custody. This appeal also contains a cross appeal alleging that the trial court erred in its refusal to find appellant in contempt of court. We hold that the trial court did not abuse its discretion and affirm.

Appellant Paula Vanderpool Byrd and appellee Clifford Vanderpool were married in 1988. They were granted an absolute divorce by the Circuit Court of Benton County, Arkansas, on September 22, 2004. The divorce decree was filed on October 12, 2004. Appellant was granted primary custody of the parties' two minor children.

On June 6, 2005, appellant filed a petition for contempt and modification of child support. Specifically, appellant requested that the trial court increase appellee's child-support payments and hold him in contempt for failure to make certain payments required by the decree, including payments for health and dental insurance premiums for the children. Appellee denied the allegation and filed a counter petition for contempt, alleging that appellant violated the terms of the divorce decree by making derogatory comments about him in front of the children.

The court heard the parties' respective petitions on September 22, 2005. It granted appellant's petition for an increase in child support. The court also found both parties in willful contempt—appellant for making derogatory statements about appellee in the presence of the children and appellee for failing to pay insurance premiums. A review and sentencing hearing was set for November 7, 2005. After the hearing on November 7 (and by order entered November 9), the court directed each to serve specified weekends in the Benton County Jail. The court also ordered the parties to communicate by telephone every Monday at 9:00 p.m.

On July 31, 2006, appellee filed a petition for contempt and for modification of custody, alleging that appellant had violated the court's November 9, 2005, order by continuing to make derogatory comments about him in front of the children and failing to "participate appropriately" in the parties' mandated telephone calls. Appellee claimed that this conduct constituted a material change in circumstances and asked the court to award him primary custody of the minor children. Appellant denied those allegations and further denied that appellee should be awarded custody. Appellant also filed a counterclaim for contempt and modification, asserting that appellee failed to communicate with her and made derogatory remarks about her in the presence of the children.

The parties' claims were heard on March 7, 2007. The trial court found that there had been a material change in circumstances and by order entered July 31, 2007, ruled that the parties should have joint custody of the children. The order set forth a series of rules and procedures for the parties to follow regarding visitation and communication that would minimize the length and number of contacts the parties would have with each other, especially in the presence of the children. The court also ordered counseling for both the children and the parties. It declined to hold either party in contempt, but warned that—based on the parties' history in this case—any future willful violations

of the court's orders would result in a "lengthy incarceration."

On July 31, 2007, appellee filed a motion for reconsideration wherein he asked the court to amend its initial order to address certain issues that had not been previously resolved. The court entered an amended order on August 30, 2007, and it is from that amended order that appellant appeals and appellee cross appeals.

■ Our supreme court has noted that "the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary." *Hamilton v. Barrett*, 337 Ark. 460, 466, 989 S.W.2d 520, 523 (1999). We review child-custody cases de novo and apply a "clearly erroneous" standard to the trial judge's findings. *Dansby v. Dansby*, 87 Ark.App. 156, 189 S.W.3d 473 (2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999).

■ First we address the court's changed-circumstances finding. It is essential that a material change in circumstances affecting the best interests of a child must be shown before a court may modify an order regarding child custody. *Thompson v. Thompson*, 63 Ark.App. 89, 974 S.W.2d 494 (1998). And, the burden of proving that the conditions have so materially changed as to warrant modification and that the best interest of the child requires a change of custody is on the party seeking modification. *Word v. Remick*, 75 Ark.App. 390, 58 S.W.3d 422 (2001). In this case, the rationale for the trial court's conclusion that a material change in circumstances had occurred was stated as such:

> The Court finds from the testimony, the credibility of the witnesses, the exhibits and other matters considered by the Court, that it appears that Susan Monson [the children's counselor] and this Court are concerned about the impact the two parents' behavior is having on the minor children, Joshua Vanderpool and Ethan Vanderpool, and are concerned enough to want to do something about it. However, the Court is concerned that both parents are more concerned with harboring their anger and resentment toward the other parent and seizing every opportunity to point out the other's faults than with how sad [sic] and the impact they are having on the minor children.

Because the trial judge in this case did not make specific findings of fact to support her conclusion that a material change in circumstances had occurred, we are required to review the evidence in the record regarding allegedly changed circumstances de novo. *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999).

After conducting a de novo review of the record, we conclude that as a matter of law the trial court's changed circumstances finding cannot stand. First, according to both the children's counselor and attorney ad litem, the children of this turbulent couple have escaped from their parents' child-like gamesmanship relatively unscathed. The professionals both noted that it is the parents, not the children, who are in need of assistance and counseling. Second, the specific incidents that appellee argues support a changed circumstance are trivial, at best. The highlights include: 1) an alleged "stomping around" and "ranting and raving" about missing coats following an exchange of custody; 2) a disagreement about which of the two bags of laundry that the children brought home from a ski trip were clean versus dirty; 3) the appropriateness of attending a Super Bowl party with the children in tow; 4) a shoulder slap, followed by a "thank you,"

that appellee took to mean as a sarcastic gesture relating to the consequences of his failure to participate in court ordered Monday telephone calls with appellant; 5) an incident where appellant nudged between appellee and his current wife during a parents' group baseball discussion with their son's coach; and 6) the fact that appellant used a "clucking chicken" ring tone to identify appellee's calls and referred to him by his nickname "Cliffy" when they would speak privately.

Appellee seems to concede that any of these "incidents," taken separately would not justify changed circumstances, but he contends that "when taken as a whole, the evidence supports [the] conclusion that appellant was not fostering his relationship with the children." Appellee then directs this court's attention to *Sharp v. Keeler,* 99 Ark.App. 42, 256 S.W.3d 528 (2007), for the proposition that a custodial parent's failure to foster the relationship between a child and the non-custodial parent constitutes a material change of circumstances. In *Keeler,* we affirmed a trial court's finding of a material change in circumstances. The court noted that the record was replete with evidence that the custodial parent was attempting to alienate the noncustodial parent from his son—including evidence that she refused to keep the father apprised of the child's medical information (and the child had serious health problems); that she failed to have the child ready for visitation; that she failed to tender the child for scheduled visitation when she felt it was in the child's best interest; and that she would not allow the father to babysit the child. This was all done following the trial court's admonishment that she "promote the bond and relationship" between the child and the non-custodial father. *Id.*

In this case, we are convinced that the scattering of petty complaints does not amount to a "failure to foster" of a significant degree to support a finding of changed circumstances. However, we would be remiss if we failed to note that it is apparent from the final order that the trial court made a valiant effort to navigate a tumultuous situation with a creative solution that would best serve the needs of the parties' children. Unfortunately, because the solution was premised on a clearly erroneous foundation, we are forced to order reversal. Further, because we conclude as a matter of law that no changed circumstances exist, there is no need to examine the merit (or lack thereof as the case may be) of the trial court's joint-custody award.

■ Finally, we turn our attention to the cross appeal challenging the trial court's refusal to find appellant in contempt of court. We review a trial court's refusal to punish an alleged contemnor using an abuse-of-discretion standard. *Page v. Anderson,* 85 Ark.App. 538, 157 S.W.3d 575 (2004). In support of reversal, appellee argues that appellant made a change to the children's health insurance without notification to him, which resulted in retroactive reimbursement. While this might be true, appellee fails to connect this act with a specific court order. Thus, it cannot be said that the trial court abused its discretion in its refusal to hold a party in contempt for violating one of its own orders. As such, we affirm.

Reversed on direct appeal; affirmed on cross appeal.

GLOVER and MARSHALL, JJ., agree.