2011 Ark. App. 457

**Janelle Pierce BOUDREAU, Appellant**

v.

**W. Ty PIERCE, Appellee.**

**No. CA 11–47.**

Court of Appeals of Arkansas.

June 22, 2011.

Brenda Dianne Austin, Fayetteville, for appellant.

Karen Pope Greenaway, Fayetteville, for appellee.

CLIFF HOOFMAN, Judge.

Appellant Janelle Pierce Boudreau appeals from the trial court's decision granting appellee William Ty Pierce's petition for a modification of custody and ordering supervised visitation. On appeal, Mrs. Boudreau argues (1) that the trial court erred in granting Pierce's petition to modify custody because he did not prove a material change in circumstances or that it would be in the best interests of the children, and (2) that the trial court abused its discretion when ordering supervised visitation because there was no evidence presented that would support supervised visitation. We affirm the trial court's modification of custody, but reverse and remand on the issue of supervised visitation.

The parties to this appeal were married in 2003 and have two daughters, L.P. and T.P., who are now eight and six years old, respectively. The parties separated in June 2008, and a decree of divorce was entered on August 1, 2008. By agreement of the parties, Mrs. Boudreau was awarded primary custody of the children and was allowed to move to Oklahoma to be near her family, with Pierce having standard visitation. Both parties resided in Prairie Grove, Arkansas, prior to their divorce, and Pierce remained in the marital home subsequent to the divorce.

On April 16, 2010, Mrs. Boudreau's mother, Lawana LaSeur, filed a petition for guardianship and a petition for temporary emergency guardianship of the children in the Oklahoma City District Court. In her application for emergency guardianship, LaSeur alleged that immediately after Mrs. Boudreau's relocation to Oklahoma, the children began spending five nights per week with LaSeur because Mrs. Boudreau was unable to properly care for them full-time; that from August 2008 until her remarriage in February 2010, Mrs. Boudreau changed residences at least four times; that Mrs. Boudreau had multiple boyfriends and would leave the children with LaSeur for days with no contact; that Mrs. Boudreau drank alcohol and became intoxicated on a daily basis, often blacking out; that after Mrs. Boudreau's remarriage to Jeff Boudreau, LaSeur learned that Mr. Boudreau used marijuana and kept it in the house with the children; that on March 25, 2010, while LaSeur was cleaning Mrs. Boudreau's home, she found marijuana in a kitchen cabinet; that Mr.

Boudreau also regularly used prescription drugs such as Adderall, Soma, and Xanax; that on March 27, 2010, the Boudreaus were out drinking and Mrs. Boudreau became so intoxicated that the police instructed Mr. Boudreau to take her home in a cab; that after returning home that evening, Mr. Boudreau attempted suicide with a pistol and that two bullet holes remained in the home, although the children were spending the night elsewhere; that LaSeur requested that Mrs. Boudreau remove the gun from the home, which she did, but that LaSeur then found out that there were two more guns remaining in the home; and that Mrs. Boudreau had refused to take T.P. to the doctor despite her complaints of burning and itching in her genital area.

An emergency hearing was held that day on LaSeur's petition without notice to either parent, and LaSeur was appointed temporary guardian of the children, with a full hearing on the petition to be set for May 11, 2010. On April 20, 2010, Mrs. Boudreau filed a motion to vacate the temporary order of guardianship, and a hearing was held on the motion that day, with Pierce also appearing pro se at the hearing. By agreement of the parties and the court, the motion was granted, and Pierce was appointed as the temporary guardian and was awarded physical custody of the two girls pending the May 11 hearing. The order also provided that Mrs. Boudreau was to have visitation at Pierce's discretion, that neither parent was to allow guns, illegal drugs, or alcohol to be in the presence of the children, and that neither parent was to consume alcohol while exercising visitation or custody.

On May 4, 2010, Pierce filed a motion for change of custody and an application for an emergency custody order in Washington County, Arkansas. In his motion, Pierce alleged that since the divorce, there had been a substantial change in circumstances that warranted a change of custody to him. Specifically, Pierce restated and adopted the allegations set forth in LaSeur's petition, and argued that the combination of drugs, alcohol, and guns combined to create an environment that was not in the children's best interest. Pierce prayed that the trial court enter a temporary order awarding him custody, consistent with the Oklahoma court's previous order, and that the trial court grant his motion for a modification of custody and award supervised visitation with Mrs. Boudreau.

The trial court granted Pierce's motion for a temporary emergency order of custody, and on May 14, 2010, a hearing was held on Pierce's motion for temporary custody and on Mrs. Boudreau's motion to set aside the emergency custody order and dismiss the motion for change of custody, based on lack of jurisdiction due to the pending case in Oklahoma.

At the hearing, Mrs. Boudreau testified that she and the children moved to Oklahoma City in August 2008. She denied that the children stayed with LaSeur several nights a week but stated that they sometimes did so if she had a date night or a work function. Mrs. Boudreau stated that she was employed as a sales representative for a company that distributes Red Bull, an energy drink, to restaurants and bars. Mrs. Boudreau testified that she drank to the point of intoxication when she was younger, but that in the past couple of years, she would drink only one or two times per week. She denied that her new husband used marijuana and testified that she had never had it in her house. When questioned about the incident with the gun being fired, Mrs. Boudreau testified that her husband was sitting on the couch adjusting something on the gun when it went off two times. She stated that the girls were spending the night with Mr. Bou-

dreau's parents at the time, and she denied telling anyone that he was trying to commit suicide. Mrs. Boudreau testified that she had removed any guns from her home and that she would have no problem signing an order prohibiting her or her husband from drinking alcohol in the presence of the children. She stated that she would not be comfortable with her mother supervising visitation with the children and argued that Pierce had been allowing her unsupervised visitation since he had received temporary custody. Mrs. Boudreau further testified that she did not see any reason why she should not have custody of the children.

Pierce testified that since he had received temporary emergency custody, he and the children were remaining in Oklahoma until the end of the school year and that they had been going to his home in Prairie Grove on the weekends. He stated that he had allowed unsupervised visitation with Mrs. Boudreau on several afternoons during the week but wanted the court to award supervised visitation because of his concerns about the gun incident. Pierce testified that he believed Mrs. Boudreau may not have been honest about removing the gun from the house and that he thought the girls would be safer with him.

After hearing the testimony of both parties, the trial court entered a temporary order as to custody and visitation, giving Pierce temporary custody and awarding supervised weekend visitation to Mrs. Boudreau. The court stated that LaSeur, Mrs. Boudreau's father, and any other person approved by Pierce were to supervise the visits, and ordered that neither party use alcohol or illegal drugs while the children were in their custody or allow third persons to do so. The trial court further stated that it had conferred with the Oklahoma trial court, that Arkansas had retained jurisdiction over the parties after the entry of the divorce decree, and that all proceedings in Oklahoma were to be stayed pending the outcome of the Arkansas case.

On July 23, 2010, a full hearing was held on Pierce's motion to modify custody. At the hearing, Mrs. Boudreau testified that she had been terminated from her job due to her many absences for court hearings and for an injury. She also testified that having her mother supervise visitation had not been going well because her mother would not comply with the court order and would leave her alone with the children at Mrs. Boudreau's home. Mrs. Boudreau did not believe that she had violated the visitation order, arguing that she did not have control over her mother's actions and that she did not understand the visitation order to prohibit her from being alone with the children for short periods of time if allowed by the supervisor. When questioned about the allegations of drug use, Mrs. Boudreau denied telling her sister that their mother had seen marijuana in a house she had recently vacated. She also denied that drugs or alcohol were being used at the time the gun went off, testifying that she and Mr. Boudreau had gone out to a work event and to celebrate his birthday, and that they had each had only two drinks and then took a taxi home earlier that evening. Mrs. Boudreau testified that the gun was normally kept in a locked box in the closet and that after the incident, she took the gun to her stepfather and had not had a gun in the house since that time.

Pierce testified that he and the children had been living at his home in Prairie Grove since the children got out of school in May. He stated that he had been employed as a sales representative for Latco for approximately five or six years and that his job required him to travel throughout the region but that he did not have to spend the night away from home.

Pierce testified that when Mrs. Boudreau had custody of the children, he had standard visitation but that she would sometimes allow extra visitation when he was in town for work. According to Pierce, he had problems keeping in contact with the children in the spring of 2010, when they were staying with LaSeur frequently. Pierce testified that he had to call LaSeur to arrange visits or that he would meet LaSeur in Tulsa for his visitation with the girls. He stated that he was not aware that LaSeur was going to file the petition for emergency guardianship until Mrs. Boudreau was shown the petition and called him. When he initially learned of the petition filed by LaSeur, Pierce stated that he thought it was just a threat, as LaSeur had made prior allegations that turned out to be exaggerated or not true. According to Pierce, Mrs. Boudreau was not being truthful in her testimony as to her compliance with the supervised-visitation order. He stated that he had hired a private investigator to monitor the weekend visits and that there were multiple occasions on which Mrs. Boudreau violated the court order requiring supervision. Pierce testified that it was in the children's best interest for him to have custody. He stated that he had registered them in the local school and had arranged for after-school and summer care. He testified that his employer was allowing him flexibility with his schedule so that he can care for the girls. Pierce also stated that he had taken the girls to the doctor and to the dentist for check-ups and that L.P. had a couple of cavities and had not been to the dentist since the divorce. As to the allegations of drug-and-alcohol use by the Boudreaus, Pierce testified that he had heard that alcohol had been around the children but that he had not heard anything about marijuana use. He further testified that he wanted visitation with Mrs. Boudreau to remain supervised because of her previous noncompliance, but he agreed that LaSeur was not the proper person to supervise.

Pierce's supervisor at Latco, Martin Swope, testified that the company had been working with Pierce to ensure that he was not required to spend the night away from home. According to Swope, Pierce is a loyal employee with a good future. Christopher Gee, the private detective hired by Pierce, also testified. He provided a report listing all of the times that the Boudreaus were alone with the girls without a supervisor, and the report showed that there were several occasions where the visitation was unsupervised while the family ran errands or went to an outing. Gee testified that "it was a common occurrence" that Mrs. Boudreau did not have a supervisor present.

Mrs. Boudreau's sister, Jade Crawford, testified that her relationship with her sister was "off and on" but that she was civil with Pierce and that was the reason that she had been able to see her nieces since the divorce. Crawford stated that she had been in Mrs. Boudreau's home on only one occasion after the divorce, after LaSeur had filed the petition for guardianship, and that she and Mrs. Boudreau discussed LaSeur's allegations at that time. According to Crawford, Mrs. Boudreau told her that LaSeur had seen marijuana in the home that Mrs. Boudreau had recently vacated, but she did not explain why it was there or say that she or her husband had used the drug. Crawford testified that she had heard other allegations about Mrs. Boudreau's drug use from their other siblings but that she did not have any independent knowledge to confirm the allegations. When she discussed the gun incident with Mrs. Boudreau, Crawford testified that her sister told her that she and her husband were arguing after they had been out drinking and that the gun accidentally went off twice. Crawford fur-

ther testified that Pierce could provide a better environment for the children ₉than her sister could and that she had no concerns about her nieces when they were in his care. Crawford stated that she had supervised two weekend visits with the children in her home and that she did not witness any concerning behavior by Mrs. Boudreau, except for her "concerns with the amount of time that she spent on the phone" during one of the visits. She testified that she did not necessarily think that supervised visitation should continue but felt that the allegations made against her sister were serious and that there should be an inspection of Mrs. Boudreau's home to make sure that it was safe and also a drug screen of the Boudreaus. Crawford further testified that she would be willing to supervise visitation if it were continued, although it would have to be at her home.

Jeff Boudreau also testified. He denied that there were any drugs, alcohol, or guns currently in his home. He explained that he was attempting to unjam the gun the night it went off and that it shocked him, but that he had it out only because the girls were not there. He further testified that he and his wife did not violate the supervised-visitation order and that they believed that if the supervisor allowed them to take the children for outings without supervision, then that was permissible. Mr. Boudreau stated that Pierce was not a proper custodian for the children because of his work schedule and the fact that he relies on many babysitters to help care for them. Mr. Boudreau had no concerns about the children when they resided at he and his wife's home and stated that he missed the girls tremendously.

After hearing all of the evidence, the trial court found that there had been a material change in circumstances. The court specifically noted the incident with the gun and stated that it was most likely due to excessive drug-or-alcohol use by Mr. Boudreau. The court ₁₀further found to be credible Crawford's testimony that Mrs. Boudreau told her that their mother had seen marijuana in a house that Mrs. Boudreau had just vacated. The court stated that, while not all of LaSeur's allegations had been proved, the Oklahoma court did find some merit to the allegations, as it had granted LaSeur's application for emergency guardianship. The pleadings from the Oklahoma proceedings were also introduced into evidence.

Finding that a material change in circumstances was present, the trial court next addressed the best interest of the children and listed factors weighing in its decision, such as stability, moral fitness, love and affection, facilitation with visitation with the noncustodial parent and grandparents, and child care. After discussing all of these factors, the trial court found that Pierce should be granted custody. Although stating that it was a tough decision because both parents clearly loved the children, the trial court found that Mrs. Boudreau's life had become unstable since the divorce and that Pierce could provide the girls with a more stable environment. The court further found persuasive the testimony that Pierce had and would continue to facilitate visitation, noting that he had indicated that the Boudreaus were welcome to come and visit at his home anytime.

Regarding Mrs. Boudreau's compliance with the supervised-visitation order, the court found her testimony that she did not read or understand the order to be not credible, but did agree that there may have been some misunderstanding by her as to the exact meaning of the order and as to whether she could be alone with the children if allowed by the supervisor. Although stating that it was "hesitant" to do so, the trial court found that supervised visitation should continue. The court stat-

ed that the Boudreaus needed to take affirmative steps to disprove some of the allegations against them, i.e., by taking drug tests and parenting classes, and that the court did not expect that visitation would have to be supervised for long. The trial court ordered that either Mrs. Boudreau's father or her sister could supervise visitation, as well as anyone else approved by Pierce. The order modifying custody was entered on September 17, 2010, and Mrs. Boudreau timely appealed from that order.

A party seeking to modify custody must prove that a material change of circumstances has occurred since the last order of custody or that material facts existed at the time of the decree that were unknown to the court. *Lloyd v. Butts,* 343 Ark. 620, 37 S.W.3d 603 (2001). Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Vo v. Vo,* 78 Ark. App. 134, 79 S.W.3d 388 (2002). The circuit court's findings in this regard will not be reversed unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Chaffin v. Chaffin,* 2011 Ark. App. 293, 2011 WL 1496000. While custody is always modifiable, appellate courts require a more rigid standard for custody modification than for initial custody determinations in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues. *Vo, supra.* There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry a greater weight than those involving the custody of minor children, and our deference to the trial judge in matters of credibility is correspondingly greater in such cases. *Id.*

Mrs. Boudreau first argues that the trial court erred in granting Pierce's petition for a change of custody because he failed to prove that a material change in circumstances had occurred. She contends that the trial court's decision was based on the gun incident and the evidence that there was marijuana in a house that she had recently vacated, and argues that this evidence is not sufficient to modify custody where there was no harm shown to the children. She cites *Byrd v. Vanderpool,* 104 Ark. App. 239, 290 S.W.3d 610 (2009), as support for her argument. In *Byrd,* this court reversed the trial court's modification of custody where the only change in circumstances shown were "trivial" and "petty" complaints based on an acrimonious relationship between the parents and where there was no evidence that these circumstances had negatively affected the children. *Id.* at 243–44, 290 S.W.3d at 612–13.

We disagree that the evidence cited by the trial court in this case as a material change in circumstances was trivial, as in *Byrd,* and did not present a potential for harm to the children. To the contrary, the testimony of Mrs. Boudreau's sister, Crawford, whom the trial court expressly found to be credible, established that the Boudreaus had been out drinking, that they had gotten into an argument, and that a gun went off twice inside the home. In addition, the trial court found credible Crawford's testimony that Mrs. Boudreau had told her that their mother had seen marijuana in a home where she and the children had lived and found that this evidence was not adequately explained or disproved. Although Mrs. Boudreau contends that it was not shown that the children were present or affected by these specific events, the combination of facts found by the trial court presented a clear potential for great harm to the

children, and there is no requirement that the trial court wait until the children are actually harmed before finding that a material change in circumstances warranting a change in custody exists.

■ In addition, this court does not examine the trial court's findings in isolation, but instead examines whether all of the factors considered in the aggregate support a modification of custody. *Vo, supra.* In this case, there was evidence of alcohol use and drug possession, as well as irresponsible behavior in combining alcohol with a loaded weapon. Also, there was evidence that Mrs. Boudreau's life had become unstable since the divorce. She had moved at least four different times, had become unemployed, had gotten remarried to someone who was alleged to abuse drugs, and had frequently left her children with her mother to such an extent that, Pierce testified, he had trouble getting in touch with the children. The failure to discharge court-entrusted care of minor children is another factor to be considered in deciding whether a material change in circumstances exists. *Watts v. Watts,* 17 Ark. App. 253, 707 S.W.2d 777 (1986). Thus, the trial court's finding that a material change in circumstances had occurred in this case is not clearly erroneous.

■ Mrs. Boudreau next contends that, even if the trial court properly found that there had been a material change in circumstances, there was no evidence that it was in the children's best interest to modify custody. Again, we disagree. The trial court made extensive findings of fact on this issue and examined several factors in making its decision to change custody to Pierce. While the court stated that it was a very tough decision, it found important Mrs. Boudreau's recent instability, as well as the serious allegations made by LaSeur that had not been adequately explained by the Boudreaus. The trial court also noted the testimony of Crawford that Mrs.

Boudreau had spent much of her time on the phone during one of her weekend visits with the children. Crawford further testified that the children would be better cared for by Pierce and that she was concerned for their safety when they were in Mrs. Boudreau's home. There was also evidence that Mrs. Boudreau had failed to take at least one of the children to the dentist since the divorce and that the child was found to have two cavities, as well as the allegation by LaSeur that Mrs. Boudreau failed to seek medical attention for one of the children's complaints of burning and itching in her vaginal area.

In contrast to Mrs. Boudreau's recent instability, the court found that Pierce had a very stable home environment. He remained in the parties' marital home, he maintained the same employment with an employer that was willing to be flexible with his schedule for the children's sake, he was involved in his church, and he was very facilitative of visitation with Mrs. Boudreau and other family members. In fact, Crawford testified that it was through her relationship with Pierce, not her sister, that she had maintained contact with her nieces. Therefore, the trial court's finding that it was in the best interest of the children for custody to be modified was not clearly against the preponderance of the evidence, and we affirm the trial court's modification of custody.

■ In her second point on appeal, Mrs. Boudreau contends that the trial court abused its discretion when ordering supervised visitation because there was no evidence presented to support supervised visitation. She asserts that there was no proof that she neglected the children's needs while in her care and also points to the trial court's statement that it found the testimony that there were currently no guns, alcohol, or drugs in her home to be credible. The fixing of visitation rights is

a matter within the sound discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007).

As Mrs. Boudreau asserts, the trial court here was hesitant to continue supervised visitation. The court, however, shared the concerns of Crawford that there had not been a full investigation of the allegations made by LaSeur or an inspection of the home to ensure that there were in fact no guns or illegal drugs that would place the children in danger. Because the Boudreaus had not taken positive steps to disprove the allegations, the trial court found that the supervision should continue. In its decision, the court strongly suggested, but did not order, that the Boudreaus undergo a drug test and take a parenting class, and the court indicated that it did not expect supervised visitation to continue for very long if they were to follow these suggestions.

We agree with Mrs. Boudreau that there is insufficient evidence that visitation should continue to be supervised under these facts. The trial court itself stated that it did not believe there were currently any drugs, alcohol, or guns in the home, and indicated that it would discontinue supervised visitation upon compliance with the court's "suggestions" that they undergo a drug test and a parenting class.[1] We therefore reverse and remand for a hearing so that the trial court may determine whether visitation should remain supervised in light of the following factors: (1) the results of court-ordered drug testing of the Boudreaus; (2) the result of an independent home study addressing the presence of guns, drugs, or alcohol in the home where visitation with the children will be exercised, in addition to any other factors relevant to the home; (3) any other factor affecting the best interest of the children.[2]

Affirmed in part; reversed and remanded in part.

GLOVER, J., agrees.

GRUBER, J., concurs.

RITA W. GRUBER, Judge, concurring.

I concur in the majority's disposition of the custody-modification issue because the applicable standard of review requires me to do so; I take no issue with the portion of the majority's opinion addressing the supervised visitation. In this case, the husband of the custodial parent accidentally discharged a legally owned gun in the home when the children were away, presenting what appears to be an isolated incident. In *Bennett v. Hollowell*, we stated that "a change in custody should not be made without proof of a subsequent material change in circumstances *affecting* the welfare of the children involved." 31 Ark. App. 209, 213–14, 792 S.W.2d 338, 341 (1990) (emphasis added). There, the chancellor determined that the DWI arrest[3] and conviction of the custodial father's wife "was not a sufficient reason to change custody," despite the children's presence in the car when she was arrested, in part

1. At the conclusion of the hearing, there was some indication that Mrs. Boudreau had in fact undergone a drug test, but the results of the test are not in the record before us.

2. We are mindful of the fact that more than nine months have passed since visitation was ordered to be supervised and that due to changed circumstances, supervised visitation may have already been discontinued by the trial court during the pendency of this appeal.

3. The arresting officer testified that he responded to a call; he found the stepmother and children in her car, which was off the road and stuck in mud; she smelled strongly of alcohol; she stumbled and almost fell when exiting the car, and she failed the sobriety tests given. *Bennett*, 31 Ark. App. at 212, 792 S.W.2d at 340.

because "he was satisfied that it would not be repeated." *Id.* at 213, 792 S.W.2d at 340. We affirmed in *Bennett,* noting the trial court's credibility determinations and that the "isolated instance" was the only evidence that custody with the father had been "detrimental to the children." *Id.* at 214–15, 792 S.W.2d at 341. In this case, no evidence was presented that the children knew the gun was in the home or had ever been in proximity to it or that the accidental gun discharges did or would affect the welfare of the children. While actual *or* potential harm to a child is enough to warrant a custody modification, the children were not actually in danger the evening the gun discharged, as they were not home, and in light of the trial court's statement that "credible testimony was presented today [by the Boudreaus] that they have removed all alcohol and the gun from the home," the children were not potentially in danger.

I cannot emphasize enough that I do not condone illegal drugs or the combination of illegal drugs, alcohol, or violence with guns, whether in the presence of children or otherwise. However, it is my belief that the gun discharges were an isolated incident and should not have been considered one of the material changes in circumstances.

Accordingly, I respectfully concur.