

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-17-255

| | |
|---|---|
| JIMMY EARL ATCHLEY<br>APPELLANT<br><br>V.<br><br>CASSIE ANN ATCHLEY<br>APPELLEE | **Opinion Delivered** November 1, 2017<br><br>APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT<br>[NO. 64DR-11-139]<br><br>HONORABLE DAVID H. MCCORMICK, JUDGE<br><br>REVERSED AND REMANDED FOR FURTHER PROCEEDINGS |

## N. MARK KLAPPENBACH, Judge

In this one-brief appeal, appellant Jimmy Earl Atchley appeals from the Scott County Circuit Court's order that granted appellee Cassie Ann Atchley's motion for directed verdict at the hearing on his motion to change custody of their children. We reverse and remand for further proceedings.

Jimmy and Cassie married in 2003, separated in 2011, and divorced in 2013. They had three children of the marriage: GA, EJA, and WA. Cassie was awarded custody, Jimmy was awarded reasonable and flexible visitation, and a "Standard Order of Visitation" was incorporated into the decree. Both parties were ordered to "maintain the minor children in a healthy and wholesome environment at all times, with no overnight visitors of the opposite sex (to whom a party is not married or related) when the children are present." Both parties

SLIP OPINION

were ordered to have appropriate beds for the children when they spent the night.

Three years later, in June 2016, Jimmy filed a petition to change custody. At that time, the twins GA and EJA were eleven years old, and WA was ten years old. EJA suffered from cerebral palsy, Asperger's syndrome, lung disease, ADD, and ADHD, and required medications to treat those conditions. Jimmy's petition alleged that since the divorce decree was entered, material changes in circumstances had occurred and that custody should be changed to him. Specifically, Jimmy alleged that Cassie systematically and continually had the children in an unwholesome environment; that Cassie had not provided appropriate medical care for their special-needs child, EJA; and that Cassie had regularly consumed large amounts of alcohol in the children's presence. Cassie filed a general denial to Jimmy's allegations.

The matter was heard in December 2016. Jimmy testified on his own behalf, and he called Cassie and EJA as witnesses. Cassie testified that she had lived with the children in one home until it burned, and then she moved to a rental house for a few months in 2015. She agreed that Preston Bays stayed occasionally at the house, but she claimed that it was not a romantic relationship, that Bays helped her around the house, and that she knew him prior to his high school graduation when he was a student and she was a substitute teacher. For about a month at the end of 2015, Cassie had the children move in with Jimmy because her new house was not ready. During that time, Cassie stayed with a friend, Brian Zimmer, and the children stayed overnight with her at Zimmer's house on a couple occasions. She said that she would sleep on the couch, and the children would sleep on a bed, the couches, or

SLIP OPINION

a hide–a–bed.

Cassie had since moved into a rental house that she intended to buy; she had lived there most of 2016. She said that this house had one bathroom and she had "made it into a three bedroom." She considered the laundry room one of the three bedrooms by putting a full-size bed and bunk bed in there. She said that GA shared the laundry room with Cassie's other daughter Kelly when she would visit on alternate weekends. She stated that her boys shared a bedroom, and she had her own bedroom. Cassie testified that a former boyfriend, David Haddocks, had stayed overnight at this house about five times and that one or two of those times the children were present.

Cassie admitted that she does consume alcohol and had been intoxicated in front of the children, but she stated that she had not been intoxicated to the point she could not control herself. She thought that she had been intoxicated in front of the children fewer than ten times since the divorce. She said that her doctor told her to take "a couple of shots" at night for her occasional back pain but that she would do that only after the children were settled down and getting ready for bed.

Cassie said that she filled EJA's medicines at the local Walgreens but that those records showed that she had not refilled his clonidine since December 2015. She agreed that EJA drew SSI benefits, that he had lost entitlement to those benefits right after the divorce in 2013, and that she did not reapply until summer 2016. She explained her delay in reestablishing his SSI by stating that she "was working odd jobs and was doing okay." Cassie

SLIP OPINION

acknowledged that in June 2016, GA had fallen on the gravel driveway while she was chasing Cassie's truck, and her knee injury required a trip to the hospital and sixteen or seventeen staples. Cassie described her method of discipline, which included verbal reprimand, use of a flyswatter, and use of a ping-pong paddle.

Then-twelve-year-old EJA testified, stating that his mother had him keep up with all his medications, which included pills and an inhaler. EJA said that he could not find one of the pills he was supposed to be taking (clonidine), although he and his mother had looked for it. EJA said that they had attended the chuck-wagon races back in April and that his mother had left all the children in her horse trailer at night. He explained that his mother had beds and a heater in the horse trailer, and she would put a tarp over the top of it. She would leave the children there and tell them to go to sleep. One night, EJA and a man named Tim Boatman had to help his mother get back to the trailer; she had stumbled into a truck as she was walking. EJA explained that Boatman worked at the chuck-wagon races, that Boatman was staying in a building in one of the barns, that he would "go crazy when he would drink," that he would cuss at them, and that he would tell them to "get out of his house."

Jimmy testified that he has a five-bedroom, three-bath house for his children; it was the same house he had had since the divorce; and he has the same job he had at the time of the divorce. Jimmy stated that he does not have a girlfriend living with him. He said that Cassie asked him to keep the children at the end of one summer because her house needed to be fumigated for bugs. Jimmy wanted custody of his children.

SLIP OPINION

At the conclusion of Jimmy's presentation, Cassie's attorney moved for directed verdict[1] on the basis that the evidence was insufficient to support a prima facie showing of a material change in circumstances that would warrant a change in custody. The trial court granted the motion. The trial court remarked that the chuck-wagon races were "not the best atmosphere" for the children; that it was a little concerned over how much Cassie thought she was drinking; and that she had by necessity moved a couple of times. The trial court concluded that the changes were not material and significant enough to show a change of custody to be in the children's best interest. In the order on appeal, the trial court made the finding that Jimmy failed to present a prima facie case on his motion to change custody and that Cassie was not required to mount a defense against this petition.

The standard of review is well settled. It is the circuit court's duty, in deciding a motion to dismiss made after the presentation of the plaintiff's case, to determine whether, if the case were a jury trial, there would be sufficient evidence to present to a jury. *Wagner v. Wagner*, 2011 Ark. App. 475; *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 61 S.W.3d 835 (2001). The circuit court does not exercise its fact-finding powers, such as judging the witnesses' credibility, in making this determination. *Wagner, supra.* On appeal, we view the evidence in the light most favorable to the nonmoving party, giving the proof presented its highest probative value and taking into account all reasonable inferences deducible therefrom. *Id.* We affirm if there would be no substantial evidence to support a jury verdict. *Id.* In other

---

[1]In reality, this was a motion to dismiss because it was presented at a bench trial.

SLIP OPINION

words, when the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Id*.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Harris v. Harris*, 2010 Ark. App. 160, at 13, 379 S.W.3d 8, 16. A judicial award of custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification of the decree will be in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that either were not presented to the circuit court or were not known by the circuit court at the time the original custody order was entered. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Grisham v. Grisham*, 2009 Ark. App. 260. The reasons for requiring more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id*. The party seeking modification has the burden of showing a material change in circumstances. *Byrd v. Vanderpool*, 104 Ark. App. 239, 290 S.W.3d 610 (2009). There is no requirement that the trial court wait until the children are actually harmed before finding that a material change in circumstances warranting a change in custody exists. *Sisson v. Sisson*, 2012 Ark. App. 385, 421 S.W.3d 312.

Jimmy's sole point on appeal is that the trial court improperly granted the motion to

SLIP OPINION

dismiss and failed to require Cassie to mount a defense to the allegations. We agree. We must view the evidence in the light most favorable to the nonmoving party (here, Jimmy), giving the proof presented its highest probative value and taking into account all reasonable inferences deducible therefrom. *Aydani v. Wagner*, 2011 Ark. App. 475. Viewed from that perspective, Jimmy presented evidence that Cassie had been repeatedly intoxicated in front of her children and had been regularly consuming concerning amounts of alcohol; that their twelve-year-old special-needs child had been put in charge of his own medications and had not had certain medicines filled by his mother for a year; that their special-needs child had had his disability benefits cut off and not reinstated for a significant period of time; that Cassie had taken her children to what even the trial court believed was a less than wholesome environment; that she left her young children alone to sleep in a tarp-covered horse trailer and had to be assisted by her special-needs son in returning (the reasonable inference being that she was intoxicated); and that Cassie had repeatedly had overnight visitors of the opposite sex in violation of their divorce decree's explicit order. Moreover, Jimmy provided evidence that he had maintained his employment and living situation, all while not having overnight visitors of the opposite sex or engaging in otherwise inappropriate behaviors. Instead, Jimmy had exercised his visitation and had willingly taken the children additional times when Cassie requested.

Given our standard of review, we must agree with Jimmy that the trial court erred in granting the motion to dismiss because it did not view the evidence in the proper light. *See*

*Sisson*, *supra*. At that juncture, the trial court was not to weigh the evidence or make credibility determinations; all the evidence was to be viewed most favorably toward Jimmy's petition. Certain factors, when examined in the aggregate, may support a custody modification even when each factor, if examined in isolation, would not. *Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664; *Davis v. Sheriff*, 2009 Ark. App. 347, 308 S.W.3d 169. Fair-minded people could have undoubtedly come to differing conclusions on this evidence. *Compare Westin v. Hays*, 2017 Ark. App. 128, 513 S.W.3d 900. It was improper to summarily dismiss Jimmy's petition to change custody where a prima facie case was presented.

Reversed and remanded for further proceedings.

VIRDEN and BROWN, JJ., agree.

*Medlock & Gramlich, LLP*, by: *M. Jered Medlock*, for appellant.

One brief only.