Cite as 2026 Ark. App. 266

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-25-207

| | | |
|---|---|---|
| | | Opinion Delivered April 29, 2026 |
| SACHIN SOLANKI | | |
| | APPELLANT | APPEAL FROM THE CLAY COUNTY CIRCUIT COURT, EASTERN DISTRICT [NO. 11PRR-22-55] |
| V. | | |
| | | HONORABLE CHARLES M. MOONEY, JR., JUDGE |
| URMILA SOLANKI | | |
| | APPELLEE | REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

This case involves a battle of wills. The decedent is Prakash Solanki, who died in South Carolina at age 85 on November 27, 2022.[1] The appellant is Prakash's son, Sachin Solanki, and the appellee is Prakash's wife, Urmila Solanki.[2] Prakash executed a will in 2007 (the 2007 will) that left almost his entire estate to Urmila, and he later executed a will in 2022 (the 2022 will) that revoked all prior wills and left Prakash's motel and all his personal property to Sachin. The trial court entered an order denying Sachin's petition to admit the 2022 will to probate and granting Urmila's petition to admit the 2007 will to probate. In its order, the trial court found that Sachin failed in his burden of proving that the 2022 will

---

[1] Prakash was a resident of Piggott, Arkansas, and was in South Carolina for only about a week before he died.

[2] Prakash was divorced from Sachin's mother, and Urmila is Prakash's second wife. Prakash and Urmila were married for approximately twenty-five years.

was properly executed in accordance with the law and found that the 2022 will was procured by undue influence and coercion.

Sachin now appeals, raising two arguments for reversal. First, he argues that this case was decided on a directed-verdict motion and that the trial court used the wrong legal standard in reaching its decision. Next, he contends that, viewing the evidence in the light most favorable to Sachin, the trial court should have found that Sachin made a prima facie case for admitting the will to probate. We agree with Sachin's arguments, and we reverse and remand for further proceedings.

Prakash and his wife, Urmila, lived in Piggott, Arkansas, on the premises of a motel that Prakash owned and operated. In November 2022, Prakash was hospitalized in Piggot with end-stage liver disease and advanced cirrhosis and was told he had just months to live. Urmila agreed to allow Prakash's children, who live in South Carolina, to take Prakash home with them and provide hospice care.

Prakash was transported to the home of his daughter, Sita Sindhi, in Inman, South Carolina. Several days later, on November 25, 2022, Prakash executed a new will that had been prepared by Sita.[3] Sita's neighbors, Holly Adams and Donald Adams, signed the attestation clause. Prakash died two days later on November 27, 2022.

---

[3]According to Sita, she prepared the will at Prakash's request.

On December 12, 2022, Sachin filed a petition for probate of his father's will in Clay County, Arkansas, where the motel was situated.[4] The petition listed Prakash's surviving spouse and heirs as Urmila, Sachin, and Sita. The petition alleged that the 2022 will was executed in all respects according to the law when the testator was competent to do so and acting without undue influence. The 2022 will, which was signed by Prakash and attached to the petition, provided that all previous wills were revoked. It further provided that Prakash devised and bequeathed to Sachin the motel located in Piggott and all of Prakash's personal property. The 2022 will did not address or purport to dispose of any other of Prakash's property. The attestation clause signed by Holly Adams and Donald Adams stated:

> The foregoing instrument was signed, published and declared by Prakash Dahya Solanki, the above-named Testator, to be his last will and testament in our presence, all being present at the same time, and we, at his request and in his presence and in the presence of each other, have subscribed our names as witnesses on the date above written.

The attesting witnesses' signatures were not notarized.

On December 22, 2022, Urmila filed a response to Sachin's petition and a counterpetition. Urmila alleged that the 2022 will was not executed in the manner required by Arkansas law and also alleged incapacity, forgery, undue influence, duress, and coercion. As such, Urmila asserted that the 2022 will was invalid and asked that Sachin's petition be

---

[4]Arkansas Code Annotated section 28-40-102(a)(1) (Repl. 2012) provides that the venue for the probate of a will and for administration shall be in the county of this state where the decedent resided at the time of his or her death and (a)(2) provides that venue is proper in the county wherein is situated the greater part of the property located in the state. Therefore, this probate case was properly filed in Arkansas in the Clay County Circuit Court.

denied. In her counterpetition, Urmila asked that the 2007 will be admitted to probate. The 2007 will was signed by Prakash and was attached to the counterpetition. The 2007 will left all of Prakash's property to Urmila with the exception that Sachin and Sita were each given "the sum of One Dollar and my best wishes for a long and happy life." The 2007 will was signed by two witnesses whose signatures were notarized.

A trial on the petition and counterpetition was held on May 17, 2023, in the Clay County Circuit Court. Sachin put on four witnesses: Holly and Donald Adams, and Sita and Sachin.

Holly Adams testified that she is friends with Sita and Sachin but had never met Prakash until the day he executed the 2022 will. Holly stated that Sita asked her to come to her house that day to witness the will and that she was present when Prakash signed it. Also present were Sita, Sachin, Donald, and a notary. Prakash was in a sitting position in a hospital bed. Holly stated that Prakash did not appear to be physically sick but "you could tell that he was struggling with some things" because he was "expecting the end of his life coming." Holly stated that from her perspective, Prakash's mental state did not seem altered at all. Holly and Prakash did not have a conversation beyond exchanging greetings, but Holly did overhear a conversation between Prakash and Sita in his native language before he signed the will.[5] Holly testified that she saw Prakash sign the will, and she identified his signature

---

[5]Prakash is of Indian descent, and his native language was Gujarati. Prakash also spoke and was literate in English.

on the will.  After she witnessed Prakash sign the will, the notary presented the will to her, and Holly signed the attestation clause.[6]

Donald Adams testified that he is friends with Sita and Sachin and that Sita asked him to witness the execution of Prakash's will.  Donald was present in the room and was sitting on a couch directly beside Prakash's bed.  Donald and Prakash exchanged greetings but Donald did not recollect Prakash saying anything about the will.  Donald saw Sachin hand the will to Prakash.  When asked whether he recognized Prakash's signature on the will, Donald stated, "The actual signature I do not recognize because I did not watch anybody sign that part actually right there, as far as looking at it as he was signing it."  Donald clarified:

> I was not standing over him when he signed it. . . .  I was actually sitting on the couch right beside where he was at when he was signing it.  But I . . . wasn't just standing there looking down.

Donald explained that he saw Prakash with a pen in his hand, and Prakash was moving the pen with his hand.  Donald stated, "I saw him as he held the pen and was writing his signature . . . as he was holding the paper."  After that, Donald signed the attestation clause.

Sachin and Sita then testified about Prakash's property and other issues.  However, because the disposition of this appeal is focused on the formalities of the execution of the will, we are omitting any further discussion.

After Sachin presented testimony regarding the execution of the 2022 will, there was a lengthy conference between the parties' attorneys and the trial court, which is described in

---

[6]The notary did not notarize the will, but she notarized a power of attorney in favor of Sachin that was executed on the same day.

more detail below. At the conclusion of this conference, the trial court stated that, procedurally, it would decide the issue of whether the formalities in executing the will were met before deciding the issues of mental capacity and undue influence. Urmila stated that she had not yet been allowed to present her proof, and the trial court informed her that, should it find that the will was properly executed, Urmila would then be able to present her witnesses at a separate hearing on the issues of mental capacity and undue influence. The trial court indicated, however, that this would be unnecessary in the event it found that will was not properly executed. The trial court inquired, "You're going to make a motion that I make a determination about the formality issue, right?" Sachin's counsel responded, "Right." Then Urmila's counsel stated, "Well, I was going to move for a directed verdict." At that point, Urmila's counsel requested permission to introduce Prakash's pertinent medical records to show his alleged lack of testamentary capacity. The medical records were admitted into evidence without objection.[7] The trial court took the matter under advisement. Although the trial court invited the parties to file briefs on the issue of whether the formalities of executing a will were met, no such briefs appear in the record prior to the trial court reaching its decision.

On January 27, 2025, the trial court issued a letter opinion. In the letter opinion, the trial court noted that although there were two attesting witnesses to the 2022 will, there

---

[7]Although the trial court stated it would not yet decide the issues of mental capacity and undue influence, it did allow Urmila to put on one witness, whose testimony is not relevant to the issues herein.

was no proof of will executed by a notary. The trial court then found that the 2022 will was not validly executed under either Arkansas or South Carolina law. The trial court stated that both states require that the signing of the will be witnessed by two individuals. The trial court stated that Arkansas law contains the additional requirements that the testator shall declare to the attesting witnesses that it is his will (publish the will) and that the attesting witnesses must sign at the request and in the presence of the testator.[8] The trial court found:

> [T]he petitioner failed to meet his burden that Will #1 (the 2022 will) even substantially complied with statutory requirements as set forth in ACA § 28-25-103 or in S.C. Code Ann. § 62-2-502. Mr. Adams testified that he did not actually see the Testator place his signatures on Will #1. Further, both Mr. and Ms. Adams testified that the Testator never acknowledged in any form that the signatures on Will #1 were his or that Will #1 was his will. Therefore, the Court finds that Will #1 was

---

[8]Arkansas Code Annotated section 28-25-103 (Repl. 2012) provides in pertinent part:

(a) The execution of a will, other than holographic, must be by the signature of the testator and of at least two (2) witnesses.

(b)(1) *The testator shall declare to the attesting witnesses that the instrument is his or her will* and . . .:

(A) Himself or herself sign;

. . . .

(2) In any of the cases listed in subdivision (b)(1) of this section:

(A) The signature must be at the end of the instrument; and
(B) The act must be done in the presence of two (2) or more attesting witnesses.

(c) *The attesting witnesses must sign at the request and in the presence of the testator.*

(Emphasis added.)

not properly executed in accordance with the law and is therefore rejected by the Court.

The trial court found further that the 2007 will substantially complied with the statutory requirements of a will and that the 2007 will shall be admitted to probate.

On January 31, 2025, the trial court entered an order denying Sachin's petition to probate the 2022 will and granting Urmila's petition to probate the 2007 will. The order stated that the trial court's January 27, 2025 letter opinion was incorporated by reference. In the order, the trial court found:

> The Court . . .finds that Will #1 (the 2022 will) was not in compliance with ACA § 28-25-103 or S.C. Code Ann. § 62-2-502 as such statutes relate to the attesting witnesses. The Testator made no statement to either of the witnesses regarding his Last Will and Testament. Neither witness was made privy to the document that they were attesting. Neither witness observed the Testator executing Will #1. Neither witness observed the other's presence during the execution of Will #1. Neither witness could identify the signature of the Testator at the hearing on this matter with one testifying, "*The actual signature I do not recognize because I did not watch anybody sign that part actually right there as far as looking at it as he was signing it.*" One witness testified that from his vantage point, he could not physically observe what document was being executed and could not observe the Testator executing anything. Neither signature was notarized. In assessing the testimony and observation of the witnesses, it is clear to the Court that neither witness could attest or verify any requirement or substantial compliance as set forth in the aforementioned statutes.

(Emphasis in original.) In addition to the above findings, the trial court found that it was clear to the court that Sachin and Sita acted in concert to recreate Prakash's last will without his mental capacity or his desire to change his will; that there was no question that Sachin intended to isolate Prakash for the purpose of unduly influencing his execution of the 2022 will; and that Sachin and Sita were not credible witnesses. The trial court denied Sachin's petition to probate the 2022 will and admitted the 2007 to probate.

Sachin timely appealed.

I. *Whether the 2022 Last Will and Testament was Executed Properly*

The conclusion of the trial below appears to be a perfect storm of problematic matters. At the outset of the trial, we can glean from the record that the court was prepared to hear testimony regarding the execution of the 2022 will, testimony regarding the testator's testamentary capacity and alleged undue influence, and testimony regarding the validity of the 2007 will. In addition to being an otherwise ambitious schedule, other problems contributed. It appears that the parties planned on calling at least six witnesses. Two of the witnesses, Holly and Harold Adams, were situated in Atlanta, Georgia, and participated via a Zoom link. Some of the witnesses were of Indian descent, and their native language was Gujarati. As a result, an interpreter was involved. The interpreter was situated in Atlanta, Georgia, and participated via a Zoom link. Further, the record reveals that the technology of the Clay County Courthouse was somewhat limited, and some of the witnesses did not have headphones or earbuds, and some participants were listening in via cell phones. The record reflects that the court reporter and the trial court had some difficulties hearing. And finally, the record reflects that inclement weather was descending on Clay County late in the afternoon. All that to explain how the end of the trial appeared to be rushed and may have contributed to the trial court's disposition of the case.

On appeal from the trial court's order, Sachin first argues that the trial court applied the wrong standard. Sachin contends that because the trial court was ruling on a directed-

9

verdict motion at the close of Sachin's case,[9] the proper inquiry was whether Sachin had made a prima facie case, and the trial court erroneously weighed the evidence and the credibility of the witnesses.

To place Sachin's argument in context, we return to the end of the hearing. Due to the various circumstances described above, it was clear to the parties and the court that all the witnesses were not going to be able to testify, and they were not going to conclude the trial. The record contains several pages of discussion among the attorneys and the court on how to proceed. The three issues remained: whether the 2022 will was executed properly, whether Prakash lacked testamentary capacity and whether he was subject to undue influence, and whether the 2007 will would be probated. At the time the trial concluded, the petitioner, Sachin, had called four witnesses, and the bulk of their testimony pertained to the execution of the 2022 will. None of Urmila's material witnesses had been called.[10]

It appears from the record that the trial court and the parties attempted to wrap up the day and bifurcate the issues. The gist of the colloquy appears to be that the court would adjourn, and the parties would submit briefs on whether the 2022 will was executed properly. Then, the trial court in short order would make a ruling. Depending on the trial court's

---

[9]Because this was a bench trial this was actually a motion to dismiss. *See* Ark. R. Civ. P. 50(a). However, the relevant standards for ruling on a motion for a directed verdict and a motion to dismiss are the same.

[10]Urmila did call one witness out of order at the end of the day, but her testimony is not relevant to the issues on appeal.

ruling, the parties, if necessary, would return to court on a future date and litigate the issues of whether Prakash was subject to undue influence, whether Prakash had testamentary capacity, and the applicability of the 2007 will.

The problem is the mechanism and lack of clarity by which the court and parties chose to move forward. Instead of submitting the issue to the court and bifurcating the issues, the following colloquy occurred:

| | |
|---|---|
| THE COURT: | [addressing Sachin's attorney] You're going to make a motion that I make a determination about the formality issue, right? |
| SACHIN'S ATTORNEY: | Right. |
| URMILA'S ATTORNEY: | Well, I was going to move for a directed verdict. |

Shortly thereafter, the court adjourned.[11]

The parties were subsequently told to submit briefs regarding the execution of the 2022 will. For various reasons, the trial court did not enter its letter opinion until January 27, 2025. In its lengthy letter opinion and subsequent order that incorporated the letter opinion, the trial court essentially made three pertinent rulings: (1) the 2022 will was not executed properly; (2) the testator lacked testamentary capacity and was subject to undue influence or coercion; and (3) the 2007 will shall be admitted to probate.

---

[11]After this colloquy, Urmila's attorney put on one witness (Diane Malden) out of order, without objection, and introduced the medical records of the testator, again without objection.

Now on appeal, to reiterate, Sachin first argues that the trial court applied the wrong standard. Sachin contends that because the trial court was ruling on a directed-verdict motion at the close of Sachin's case,[12] the proper inquiry was whether Sachin had made a prima facie case, and the trial court erroneously weighed the evidence and the credibility of the witnesses. Because the record reflects that the court entertained Urmila's motion for directed verdict, that is the manner in which we commence our review of Sachin's first point on appeal. From this point forward, we will refer to Urmila's motion for directed verdict as a motion to dismiss.

We addressed our standard of review of a motion to dismiss in *Atchley v. Atchley*, 2017 Ark. App. 575, at 5–6, 534 S.W.3d 719, 722:

> It is the circuit court's duty, in deciding a motion to dismiss made after the presentation of the plaintiff's case, to determine whether, if the case were a jury trial, there would be sufficient evidence to present to a jury. The circuit court does not exercise its fact-finding powers, such as judging the witnesses' credibility, in making this determination. On appeal, we view the evidence in the light most favorable to the nonmoving party, giving the proof presented its highest probative value and taking into account all reasonable inferences deducible therefrom. We affirm if there would be no substantial evidence to support a jury verdict. In other words, when the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed.

(Citations omitted.) When deciding a motion to dismiss after the plaintiff rests his or her case during a bench trial, if the nonmoving party has made a prime facie case on its claim,

---

[12]As previously noted, because this was a bench trial this was actually a motion to dismiss. *See* Ark. R. Civ. P. 50(a). And the relevant standards for ruling on a motion for a directed verdict and a motion to dismiss are the same.

then the fact-finder must resolve the fully presented case on the merits.[13] *PST Tax Inc. v. Tindall*, 2021 Ark. App. 388. Sachin argues that the trial court failed to adhere to these standards and did not view the evidence in a light most favorable to Sachin in reaching its decision.

Sachin next argues that, viewing the evidence in the light most favorable to him, he made a prime facie case for probating the 2022 will. Sachin argues that, contrary to the trial court's findings, there was prima facie evidence that the will was properly executed under either Arkansas or South Carolina law. Having reviewed the record, we agree that the trial court erred in effectively granting Urmila's motion to dismiss at this stage of the proceedings.

Arkansas Code Annotated section 28-25-105 (Repl. 2012) provides:

> A will executed outside this state in a manner prescribed by §§ 28-25-101 — 28-25-104 *or a written will executed outside this state in a manner prescribed by the law of the place of its execution* or by the law of the testator's domicile at the time of its execution *shall have the same force and effect in this state as if executed in this state in compliance with the provisions of §§ 28-25-101 — 28-25-104.*

(Emphasis added.) Section 105 describes three different situations in which a will that is executed outside the state may be found properly executed and be afforded the same force and effect in Arkansas as if executed herein: (1) if the out-of-state will was executed in conformance with Arkansas law; (2) if the out-of-state will was executed in conformance with the law of the state where executed (here, South Carolina); or (3) if the out-of-state will was executed in conformance of the law of the state where the decedent was domiciled.

---

[13]Another anomaly is that Sachin never formally rested his case-in-chief before Urmila's attorney moved to dismiss.

The laws regarding execution of wills in Arkansas and South Carolina are substantially similar. However, there are also significant and meaningful differences. One difference is that Arkansas law requires that the testator *shall declare* to the attesting witnesses *that the document is his will* (publish the will) and that the attesting witnesses must sign *at the request* and in the presence of the testator. *See* Ark. Code Ann. § 28-25-103(b)(1) and (c). On the other hand, South Carolina law does *not* require the testator to *declare* that the document is his will and *request* the individuals to witness the will.

South Carolina Code Annotated section 62-2-502 provides that every will shall be

(1) in writing;

(2) signed by the testator or signed in the testator's name by some other individual in the testator's presence and by the testator's direction; and

(3) signed by at least two individuals each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will.

In ruling on Urmila's motion to dismiss, the trial court found that the execution of the 2022 will did not comply with the requirements of South Carolina law or Arkansas law because the attesting witnesses, Holly Adams and Donald Adams, did not observe Prakash execute the will. However, viewing the evidence in the light most favorable to Sachin as we are required to do when reviewing a motion to dismiss, we conclude that a prima facie case was made that the signing of the will was properly witnessed by these two attesting witnesses. Holly testified that she personally witnessed Prakash sign the will, and she identified his signature on the will. Holly also testified that her husband, Donald, was present in the room when the will was executed. Donald testified that he saw Sachin hand the will to Prakash,

14

who was sitting in his hospital bed.  Donald testified that he was not standing over Prakash

when he signed the will but that he was sitting on a couch right next to Prakash.  From his

vantage point, Donald did not see the tip of the pen actually touch the paper, but he could

tell that Prakash was signing the will because Prakash was holding the pen and making hand

movements.  Donald testified, "I saw him as he held the pen and was writing his signature .

. . as he was holding the paper."  Both Holly and Donald stated that after Prakash signed the

will, they signed the attestation clause.

Another significant difference between Arkansas probate law and South Carolina

probate law is that while South Carolina requires two witnesses to attest to the will, South

Carolina law requires only one witness to testify.  South Carolina Code Annotated section

62-3-406(3) provides:

> [I]f the will is witnessed pursuant to Section 62-2-502, but not notarized or self-proved, the testimony of at least one of the attesting witnesses is required to establish proper execution if the witness is within this State, competent, and able to testify.  Proper execution may be established by other evidence, including an affidavit of an attesting witness.  An attestation clause that is signed by the attesting witnesses raises a rebuttable presumption that the events recited in the clause occurred.

Here, Donna Adams testified that both she and Donald were present when the will was

signed, that the signature on the will was that of the testator, and that she witnessed his

signature, as contemplated by section 62-3-406(3).

Further, in *Pennington v. Pennington*, 1 Ark. App. 311, 316, 615 S.W.2d 391, 394

(1981), we rejected the appellant's challenge to proper execution of the will, and we

explained:

15

Appellants make much of the fact that Dr. Delamore and Mr. Abbott were not able to definitely testify that they saw Jackson M. Pennington sign the will. However, Dr. Delamore indicated that he did not believe that he would have signed the attestation clause unless Mr. Pennington had signed the will in his presence. Mr. Abbott was "pretty sure" that he had seen Mr. Pennington sign his name.

The will in this case appears to have been duly executed and the attestation clause was established correctly by the testimony of Dr. Delamore and Mr. Abbott. There is no evidence that the will was executed in any manner other than is required by statute and we believe the Court properly admitted the will to Probate.

Having considered the testimony of Holly and Donald Adams, under either Arkansas law or South Carolina law, we conclude that a prima facie case was made that each of them witnessed Prakash sign the will and that the trial court erred in concluding otherwise. It is equally clear that the trial court made credibility determinations and weighed the evidence, which is not permitted in ruling on a motion to dismiss. Therefore, we hold that the trial court erroneously granted the motion to dismiss Sachin's petition on the basis of improper execution of the will.

II. *Whether the Testator was Subject to Undue Influence or Lacked Testamentary Capacity*

In the trial court's letter opinion, in addition to the court's finding that the 2022 will was not executed properly, the trial court found that there existed a clear lack of testamentary capacity and undue influence, duress, coercion, and illegal activity on the part of the beneficiaries and that both beneficiaries engaged in the unauthorized practice of law. And finally, the trial court found that the 2007 will should be admitted to probate.

We return to our previous discussion that the disposition of this case below was the granting of a motion to dismiss; therefore, we review the trial court's order in that light.

16

During the trial of this matter, Sachin offered the testimony of four witnesses, most of whom testified concerning the execution of the 2022 will. Sachin did not present any evidence or witnesses on the issues of whether the testator lacked testamentary capacity or was subject to undue influence and coercion. The only evidence introduced regarding the testator's testamentary capacity, if any, were the medical records introduced by Urmila's counsel at the conclusion of the hearing. In fact, during the final colloquy among the court and counsel, the court announced that the parties would be allowed to present evidence and testimony on these issues in the future. Under these circumstances and for the same reasons we held that the court erred in granting the motion to dismiss regarding the execution of the 2022 will, we hold the court erred in granting the motion to dismiss regarding the testator's lack of testamentary capacity and undue influence. Further, we hold that the trial court erred in admitting the 2007 will to probate.

We reverse and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

KLAPPENBACH, C.J., and GLADWIN, J., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellant.

*Clifford M. Cole*, for appellee.